**U.S. BANK, N.A., Appellant–Third–Party Plaintiff,**

v.

**INTEGRITY LAND TITLE CORP.,**
Appellee–Third–Party
Defendant.

No. 17A03–0812–CV–577.

Court of Appeals of Indiana.

June 16, 2009.

Septtimous Taylor, Owensboro, KY, Attorney for Appellant.

Bryce H. Bennett, Jr., Elizabeth C. Green, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

Following the trial court's entry of summary judgment in favor of Integrity Land Title Corp. ("Integrity"), U.S. Bank, N.A. ("U.S.Bank"), filed a motion to correct error and a motion for relief from judgment. U.S. Bank appeals the denial of these motions, as well as the granting of Integrity's motion to strike certain material filed in support of U.S. Bank's motions. We hold that the trial court abused its discretion in denying U.S. Bank's motion to correct error and motion for relief from judgment as to U.S. Bank's contract claim against Integrity but did not abuse its discretion in denying the motions as to U.S. Bank's tort claim. Because the stricken material at issue is substantially similar to material designated on summary judgment, we decline to reach the issue of whether the trial court abused its discretion in granting Integrity's motion to strike. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.[1]

The facts most favorable to U.S. Bank, the opponent of Integrity's summary judgment motion, indicate that in January 2006, Brenda Daley was the owner of certain real property in Auburn, Indiana. She agreed to sell the property to Michael Davison. Davison's lender, Texcorp Mortgage Bankers, Inc., contracted with Integ-

rity to prepare a title commitment, conduct the mortgage closing, and provide Texcorp, "its successors and/or assigns, with an insured first and superior mortgage lien against the subject real property." Appellant's App. at 331 (affidavit of Texcorp vice president Bruce Grimes). Integrity contracted with Rainbow Searchers, Inc., to perform a title search. Rainbow Searchers' report failed to note the existence of a 1998 foreclosure judgment against Daley, which ultimately was assigned to LPP Mortgage LTD. Integrity issued a title commitment to Texcorp, which indicated that the title search had uncovered no judgments against Daley. In reliance on the title commitment, Texcorp approved a mortgage loan in the amount of $123,090.00.

On February 3, 2006, the closing was held at Integrity's office in Fort Wayne. Integrity received payment for conducting the closing and the title search, as well as the premium for the mortgage insurance policy ("the Policy"). *Id.* at 339 (HUD–1 settlement statement). The Policy was issued by Southern National Title Insurance Company ("Southern National") in the amount of $ 123,090.00 and named Texcorp and its successors and/or assigns as the insured.[2] The Policy reads in pertinent part as follows:

*LIABILITY LIMITED TO THE POLICY: POLICY ENTIRE CONTRACT*

(a) This policy together with all endorsements, if any attached hereto by [Southern National] is the entire policy

---

1.  We heard oral argument on May 6, 2008, in Indianapolis as part of the Indiana State Bar Association's Appellate Oral Advocacy CLE program. We thank counsel for their participation and the Indiana State Bar Association's Appellate Practice Section for organizing the event.

2.  The HUD–1 settlement statement indicates that the closing fee was paid by Daley, the

title search fee was paid by Davison, and the Policy's premium was paid by both parties. Appellant's App. at 339. The statement also indicates that Integrity received payment for the closing and the title search in its own capacity, whereas it received payment for the insurance premium as Southern National's agent. *Id.*

and contract between the insured and [Southern National]. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby any action asserting such claim, shall be restricted to this policy.

*Id.* at 343. Texcorp's mortgage was subsequently assigned to U.S. Bank.

In August 2006, LPP Mortgage filed suit against Davison and Texcorp to enforce and foreclose its judgment lien. U.S. Bank intervened in September 2006. In December 2007, U.S. Bank filed a third-party complaint against Integrity and Southern National. The complaint first alleged that U.S. Bank's "pending loss is a direct and proximate result of negligent real estate closing and certification of title by [Southern National], through its agent [Integrity]." *Id.* at 79. The complaint also alleged that U.S. Bank was entitled to recover under the Policy against both Southern National and Integrity. U.S. Bank attached a copy of the Policy to its complaint. In February 2008, the trial court issued an order granting summary judgment and a final decree enforcing and foreclosing judgment lien in favor of LPP Mortgage in the amount of $143,210.98. The court adjudged LPP Mortgage's lien to be a valid first priority lien superior to U.S. Bank's mortgage.

In March 2008, U.S. Bank filed a motion for summary judgment against Southern National and Integrity, asserting that U.S. Bank was entitled to judgment "for their breach of contract and negligent or incorrect certification that U.S. Bank, NA possesses a first and superior lien against the subject real estate." *Id.* at 98. Soon

thereafter, Southern National became insolvent and was liquidated.

In June 2008, Integrity filed a cross-motion for summary judgment and a response to U.S. Bank's summary judgment motion. In support of its cross-motion, Integrity designated an affidavit from its president, Chris Raptis, who averred that Integrity acted solely as Southern National's agent during the closing; that the title search was performed on behalf of Southern National; that Integrity did not agree to examine the property's title for Texcorp's benefit; that Integrity "acted solely as an agent to facilitate Southern National's issuance of, and was not a party to, the [Policy] issued by Southern National"; and that Integrity "was not a party to any contract entered into by and between [Integrity] and [Texcorp], its successors and/or assigns." *Id.* at 270.

U.S. Bank filed a response to Integrity's cross-motion for summary judgment and designated the affidavit of Texcorp vice president Bruce Grimes. Grimes averred that Texcorp had "contracted directly with [Integrity] for the purpose of preparing title commitment, conducting mortgage closing, and providing [Texcorp], its successors and/or assigns, with an insured first and superior mortgage lien against the subject real property." *Id.* at 331. Grimes further averred that Texcorp had issued its mortgage in reliance on Integrity's title commitment and that, aside from receiving the Policy, Texcorp "had no contact or relationship with [Southern National] with regard to the subject mortgage loan and real estate." *Id.* In its response, U.S. Bank argued that it was entitled to recover in contract both as a successor to Texcorp's direct contract with Integrity (as evidenced by Grimes's affidavit) and also as a third-party beneficiary to any contract between Integrity and Southern National regarding the performance of the title

search. U.S. Bank also argued that it was entitled to recover in tort as a third-party beneficiary.

In July 2008, U.S. Bank gave notice that it would depose Raptis on August 19, 2008, prior to the summary judgment hearing scheduled on that date. Immediately after Raptis's deposition, the trial court held a hearing on the summary judgment motions. On September 2, 2008, the trial court denied U.S. Bank's summary judgment motion as to Integrity and granted the motion as to Southern National. The court also granted Integrity's summary judgment motion. The court found that Integrity was not a party to the Policy and therefore owed no contractual duty to U.S. Bank. Additionally, the court found that U.S. Bank's injury was not foreseeable by Integrity; that the two parties lacked a relationship "necessary to impose a duty"; that "public policy considerations weigh against finding" that Integrity owed a duty to U.S. Bank; and that therefore Integrity "owed no duty in tort" to U.S. Bank. *Id.* at 26.

On September 29, 2008, U.S. Bank filed a motion to correct error and a motion for relief from judgment, as well as a supporting memorandum and appendix, which included Raptis's deposition and an affidavit from U.S. Bank's counsel, Septtimous Taylor. U.S. Bank asserted that Raptis's deposition "constitutes newly discovered evidence contradicting [his] previously submitted Affidavit" and that both Raptis's deposition and Grimes's affidavit established the existence of "a direct relationship, both contractual and in tort, between [Integrity] and [Texcorp], its successors and assigns." *Id.* at 418. On October 10, 2008, Integrity filed a statement in opposition to U.S. Bank's motions and a motion to strike Raptis's deposition and several paragraphs of Taylor's affidavit. On October 20, 2008,

without holding a hearing, the trial court summarily granted Integrity's motion to strike and denied U.S. Bank's motions. This appeal ensued.

U.S. Bank asserts that the trial court erred in denying its motion to correct error and its motion for relief from judgment. We review the denial of such motions for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes,* 885 N.E.2d 1265, 1270 (Ind.2008). U.S. Bank filed these motions following the trial court's grant of Integrity's summary judgment motion and denial of U.S. Bank's summary judgment motion. Pursuant to Indiana Trial Rule 56(C), "summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Blasko v. Menard, Inc.,* 831 N.E.2d 271, 273 (Ind.Ct.App.2005), *trans. denied* (2006). "A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Knight v. Ind. Ins. Co.,* 871 N.E.2d 357, 361 (Ind.Ct.App.2007).

> A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial.

*Blasko,* 831 N.E.2d at 273. (citation omitted).

Furthermore, we note that

> [t]he trial court's grant of a motion for summary judgment comes to us cloaked

with a presumption of validity. However, we review a trial court's grant of summary judgment de novo, construing all facts and making all reasonable inferences from the facts in favor of the non-moving party. We may affirm the trial court's grant of summary judgment upon any basis that the record supports. *Garriott v. Peters*, 878 N.E.2d 431, 435–36 (Ind.Ct.App.2007) (citations omitted), *trans. denied* (2008). "When the parties have filed cross-motions for summary judgment, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 608 (Ind.Ct.App.2008), *trans. denied.* "Special findings are not required in summary judgment proceedings and are not binding on appeal. However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review." *Id.* (citation omitted).

◼ As mentioned above, the trial court found that Integrity was not a party to the Policy and therefore owed no contractual duty to U.S. Bank. We note, however, that U.S. Bank alleged in its response to Integrity's summary judgment motion that Integrity owed a contractual duty to U.S. Bank arising out of its relationship with Texcorp, which was described in Grimes's affidavit.[3] Integrity contends that Grimes's affidavit contains inadmissible legal conclusions regarding the existence

and legal effect of the contract that the trial court should have disregarded in ruling on the summary judgment motions. *See Paramo v. Edwards,* 563 N.E.2d 595, 600 (Ind.1990) ("Affidavits supporting or opposing summary judgment must set forth such facts as would be admissible in evidence. T.R. 56(E). Conclusory statements not admissible at trial should be disregarded when determining whether to grant or deny a summary judgment motion."); *Dorsett v. R.L. Carter, Inc.,* 702 N.E.2d 1126, 1127 (Ind.Ct.App.1998) ("The trial court may consider only evidence that can be admitted at trial in reaching a summary judgment determination."), *trans. denied* (1999). Integrity further contends that Grimes's affidavit

> failed to provide factual support for such conclusory statements. For instance, the Affidavit did not state: (1) whether the contract was written or oral, (2) essential terms of the contract, (3) the specific representative(s) of [Texcorp] and [Integrity] who entered into the contract on behalf of each, (4) the date on which the contract was entered into, or (5) the consideration provided.

Appellee's Br. at 13 (citations to appendix omitted).

◼ We first observe that the trial court's summary judgment order does not specify which portions of the affidavit, if any, the court disregarded as inadmissible.[4] In any event, we do not believe that

---

3. To the extent Integrity suggests that U.S. Bank's allegation constitutes an improper amendment of its original complaint, we note that Integrity did not move to strike it and thus consented to the litigation of the issue on summary judgment. *See Fortmeyer v. Summit Bank,* 565 N.E.2d 1118, 1121 (Ind.Ct.App. 1991) ("If an issue is actually litigated with the implied consent of the parties, any issue justified by the evidence may be injected into the proceedings.").

4. Integrity claims that it "timely objected to the admissibility" of Grimes's affidavit. Appellee's Br. at 13. Integrity tells only half the story. Integrity filed a motion to strike Grimes's affidavit, and U.S. Bank filed a motion to strike Raptis's affidavit. At the summary judgment hearing, both parties orally withdrew their motions to strike. The discussion concluded as follows:

    MR. BENNETT [Integrity's counsel]: Well, I'm just going to argue that the, uh, any inadmissible testimony in [Grimes's] Affidavit

the affidavit was either impermissibly conclusory or that it was required to contain such specific details to raise a genuine issue of material fact regarding whether Integrity had a contract with Texcorp and whether Integrity breached that contract. "The basic requirements for a contract include offer, acceptance, consideration, and a meeting of the minds of the contracting parties." *Batchelor v. Batchelor*, 853 N.E.2d 162, 165 (Ind.Ct.App.2006). "Only essential terms need be included to render a contract enforceable. All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom. Absolute certainty in all terms is not required." *Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.*, 824 N.E.2d 388, 398 (Ind.Ct.App.2005) (citations and quotation marks omitted). "The existence of a contract is a question of law." *Batchelor*, 853 N.E.2d at 165. "[W]hether a breach of contract has occurred is a question of fact to be determined by the trier of fact." *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 621 (Ind.Ct. App.2000), *trans. denied* (2001).

■ Grimes's affidavit establishes that Texcorp requested that Integrity prepare a title commitment, conduct the mortgage closing, and provide "an insured first and superior mortgage lien against the subject real property"; that Integrity prepared the title commitment, which indicated that it had "performed a title search on the subject property and found no prior judgment liens"; that, in reliance on the commitment, Texcorp approved the mortgage loan in the amount of $123,090.00; and that Integrity provided Texcorp with the Policy, which insured "a first and superior mortgage against the real estate[.]" Appellant's App. at 331. From Grimes's use of the word "contracted," one may reasonably infer that Integrity received valuable consideration for its services; this inference is supported by the HUD–1 settlement statement. Although Grimes's affidavit does not disclose the precise terms of the contract or whether they were reduced to writing, we conclude that it states facts sufficient to suggest that a contract existed between Integrity and Texcorp. These facts are contradicted by Raptis's affidavit, and thus a genuine issue of material fact exists regarding the existence of the con-

should not be considered, not based on a technicality but based on the substance of it.

THE COURT: So you're not filing a Motion To Strike that Affidavit you're just basically, the Motion To Strike you're withdrawing that, you're going to argue as part of the argument today that the information contained in the Affidavit is not admissible at trial therefore it's not admissible in a Motion.

MR. BENNETT: That's correct, Your Honor.

THE COURT: Mr. Taylor [U.S. Bank's counsel], I can't tell where you're at on this.

MR. TAYLOR: Well, I'm, I thought we were in agreement but now we've change[d] the rules and I, it's sort of like we've been all along in this case. Uh, I guess I want to know how is the Court is [sic] going to treat it. You know, I don't.

THE COURT: I don't think he needs to make a Motion To Strike relative to inadmis-

sible statements in an Affidavit. I think that is one of the vehicles he has a right to use but I don't think that's the only vehicle. I think he has [the] right to argue, Judge, you need to ignore that.

MR. TAYLOR: Fine, I'll make the same argument with their Affidavit. I mean whatever the arguments for our Affidavit, ditto for their Affidavit.

THE COURT: So, what do you think, Mr. Bennett?

MR. BENNETT: Well, I, I think we're clear on this, that all the Motions To Strike have been withdrawn and that any argument with regard to the admissibility of testimony has been preserved.

THE COURT: That's my understanding. Are we on the same wave length?

MR. TAYLOR: Yes, Sir.

THE COURT: Alright.

Tr. at 12–13.

tract. Grimes's affidavit also raises a genuine issue of material fact regarding whether Integrity contracted as a principal or as an agent[5] and whether Integrity breached the contract. Thus, we conclude that the trial court erred in granting summary judgment in favor of Integrity on U.S. Bank's contract claim.[6]

As for its tort claim, U.S. Bank asserts that the issue is one of first impression in Indiana, namely, "whether or not a title company, after issuing an incorrect title commitment in which the recipient (mortgage company) relied upon to its detriment, owes a duty to the recipient to [which] it certified clear title to the subject real property." Appellant's Br. at 13. The fact remains, however, that any liability arising from Integrity's alleged breach of this duty does not extend beyond its "mere failure to fulfill [its] contractual obligations"—whether as a party or a third party—to Texcorp/U.S. Bank. *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind.2003). As such, a tort remedy is not available to U.S. Bank. *See id.* at 173 ("The basic theory underlying the distinction between contract and tort is that tort liability is imposed by law and that contract liability is the product of an agreement between the parties."); *id.* at 175 ("When the parties have, by contract, arranged their respective risks of loss, . . . the[n] tort law should not interfere."). Therefore, we conclude that the trial court did not abuse its discretion in denying U.S. Bank's motion to correct error and motion for relief from judgment as to its tort claim.

As a final consideration, we note that the operative facts averred in Grimes's affidavit regarding Texcorp's relationship with Integrity are substantially similar to those testified to under oath by Raptis in his deposition. Consequently, we decline to reach the issue of whether the trial court abused its discretion in striking Raptis's deposition and several paragraphs of Taylor's affidavit, which stated that Raptis's deposition "represent[ed] his true and accurate testimony" and impeached his affidavit. Appellant's App. at 449.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and MAY, J., concur.

---

5. To the extent Integrity suggests that it acted as Southern National's agent and therefore could not have acted as Texcorp's agent, we note that it is possible for an agent to serve more than one principal. *See, e.g.,* RESTATEMENT (THIRD) OF AGENCY § 8.06 (acknowledging same).

6. Because we reverse on this ground, we do not address U.S. Bank's argument regarding its third-party contract liability theory. If in fact a contract existed between U.S. Bank and Integrity and Integrity breached that contract, we note that the Policy proceeds (if any) would mitigate U.S. Bank's damages but would not mitigate Integrity's liability.