ATTORNEY FOR APPELLANT
Septtimous Taylor
Owensboro, Kentucky

ATTORNEYS FOR APPELLEE
Bryce H. Bennett, Jr.
Elizabeth C. Green
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 17S03-1002-CV-120

U.S. BANK, N.A.,

*Appellant (Plaintiff below),*

v.

INTEGRITY LAND TITLE CORP.,

*Appellee (Defendant below).*

Appeal from the DeKalb Superior Court, No. 17D02-0608-MF-160
The Honorable Monte L. Brown, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 17A03-0812-CV-577

**June 29, 2010**

**Sullivan, Justice.**

A lender seeks to hold a title commitment issuer, with which it had no contractual privity, liable for negligence in failing to uncover a defect during the title search. The title company claims it has no contractual obligation to lender, and that the so-called "economic loss rule" prevents lender from recovering in tort. We provide extensive background on the economic loss rule, a rule that prevents recovery in tort for purely pecuniary harm, and the exceptions to the rule in another case we decide today, Indianapolis-Marion County Public Library v. Charlier Clark & Linard, PC, – N.E.2d –, No. 06S05-0907-CV-332, slip op. (Ind. June 29, 2010). Be-

cause we find that the facts of this case fit within one of the exceptions to the economic loss rule, namely the tort of negligent misrepresentation, we hold that applicable tort law permits U.S. Bank's tort claim to go forward.

## Background

The facts most favorable to U.S. Bank, N.A. ("U.S. Bank"), the opponent of the summary judgment motion on appeal in this case, indicate that in January 2006, a buyer of real property secured a mortgage loan from lender Texcorp Mortgage Bankers ("Texcorp")[1]. Prior to the release of funds, Texcorp contracted with Integrity Land Title Corp. ("Integrity") to prepare a title commitment, conduct the mortgage closing, and provide Texcorp, "its successors and/or assigns, with an insured first and superior mortgage lien against the subject real property." (Appellant's App. at 331.) Based on its title search, Integrity issued a title commitment which indicated that the title search had uncovered no judgments against the seller of the real property. Based on Integrity's commitment, Southern National Title Insurance Corporation ("Southern") issued and underwrote a mortgage insurance policy ("the Policy") naming Texcorp and its successors and/or assigns as the insured. Texcorp approved a mortgage loan in the amount of $123,090.00. In February 2006, the closing was held at Integrity's office in Fort Wayne. Integrity received payment for conducting the closing and the title search, as well as the premium for the Policy.[2]

Integrity's title search had not revealed a 1998 foreclosure judgment on the property from LPP Mortgage LTD ("LPP") and in August 2006, LPP filed suit against the owner of the property and Texcorp to enforce and foreclose the 1998 judgment lien. Subsequently, U.S. Bank succeeded Texcorp's interests and intervened in the action. U.S. Bank filed a third-party claim against Integrity and Southern, asserting the following claims: (1) breach of contract, and (2) the tort of negligent real estate closing. In February 2008, the trial court entered judgment and final

---

[1] Texcorp subsequently assigned the note and mortgage to U.S. Bank, and both parties will be referred to interchangeably throughout this opinion.

[2] A settlement statement accompanying the closing documents indicates that the closing fee was paid by the seller, the title search fee was paid by buyer, and the policy's premium was paid by both parties. The statement also indicates that Integrity received payment for the closing and the title search in its own capacity, whereas it received payment for the insurance premium as Southern's agent.

decree in favor of LPP, and the property was later sold to satisfy the judgment. LPP's lien was adjudicated as a first and superior lien against the property and LPP received all the proceeds from the sale, leaving U.S. Bank without any recourse on its mortgage loan.

The case was next presented to the trial court on U.S. Bank and Integrity's cross-motions for summary judgment. The trial court granted U.S. Bank's motion as to Southern[3] and denied its motion as to Integrity. The court also granted Integrity's motion, stating it was not in breach of contract because it was not a party to the title insurance policy, issued by Southern, and it was not negligent because it owed no duty to U.S. Bank in tort.

U.S. Bank appealed. Initially, the Court of Appeals affirmed in part, and reversed in part. U.S. Bank, N.A. v. Integrity Land Title Corp., 907 N.E.2d 616 (Ind. Ct. App. 2009). On the tort claim, the Court of Appeals affirmed, stating under Indiana precedent Integrity owed no duty in tort to U.S. Bank. On the contract claim, the Court of Appeals reversed. However, upon rehearing, the Court of Appeals affirmed its ruling on U.S. Bank's tort claim but vacated its reversal of summary judgment on U.S. Bank's contract claim, thereby affirming the trial court in all respects. U.S. Bank, N.A. v. Integrity Land Title Corp., 907 N.E.2d 616 (Ind. Ct. App. 2009), vacated in part on reh'g, 914 N.E.2d 320 (Ind. Ct. App. 2009). U.S. Bank sought, and we granted, transfer, thereby vacating the opinion of the Court Appeals. Ind. Appellate Rule 58(A).

**Discussion**

**I**

Integrity has argued at every stage of this litigation that it was not in contractual privity with U.S. Bank. This is a critical point. Were there to be a contract between Integrity and U.S. Bank, the parties in all likelihood would be relegated to their contractual remedies. See Indianapolis-Marion County Pub. Library, – N.E.2d at –, slip op. at 8 (quoting Miller v. U.S. Steel Corp., 902 F.2d 573, 574 (7th Cir. 1990) (Posner, J.)). We adopt Integrity's position that it was

---

[3] Subsequent to this ruling, Southern, the party with which U.S. Bank had contractual privity, was dissolved, rendering it unavailable as a source of relief for U.S. Bank.

not in contractual privity with U.S. Bank, and we summarily affirm the decision of the Court of Appeals as to this issue. Ind. Appellate Rule 58(A)(2).

Given the absence of privity, we turn to U.S. Bank's tort claim. U.S. Bank argues that this is an issue of first impression in Indiana, namely, "whether or not a title company, after issuing an incorrect title commitment in which the recipient ([lender]) relied upon to its detriment, owes a duty [in tort] to the recipient to [which] it certified clear title to the subject real property." (Appellant's Br. at 13.) Integrity responds that under Indiana law, U.S. Bank had no tort cause of action against Integrity because there is no independent tort cause of action for a mortgage company against a title company that issues an incorrect title insurance commitment to the underwriter of the insurance policy.

As we explain in detail in Indianapolis-Marion County Public Library, under longstanding Indiana law, "a defendant is not liable under a tort theory for any purely economic loss caused by its negligence (including, in the case of a defective product or service, damage to the product or service itself)." – N.E.2d at –, slip op. at 4-5. We go on to note that "[t]his rule precluding tort liability for purely economic loss – that is, pecuniary loss unaccompanied by any property damage or personal injury (other than damage to the product or service itself) – has become known as the 'economic loss rule[,]'" and where injury to a product or service results in purely pecuniary loss, the economic loss rule prevents any recovery. Id. at 5. However, we cautioned that the economic loss rule admits of certain exceptions for purely commercial loss in several special circumstances. See id. at 10. "Indiana courts should recognize that the rule is a general rule and be open to appropriate exceptions, such as (for purposes of illustration only) lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement." Id. at 18. See also Restatement (Third) of Economic Torts and Related Wrongs § 12 (Council Draft No. 2, 2007).[4]

---

[4] See Indianapolis-Marion County Pub. Library, – N.E.2d at –, slip op. 5-6, nn. 5 & 6 for background on this Restatement Council Draft.

The precise issue presented here concerns the exception of negligent misrepresentation: whether the issuance of a title commitment and subsequently issued title insurance policy give rise in Indiana to a tort cause of action for negligent misrepresentation against a title insurer or commitment issuer, separate and apart from the contractual obligations of the title policy. Courts in our sister jurisdictions are split on the question of whether a title insurer or a commitment issuer can be exposed to liability in tort for negligent misrepresentation regarding the search of title records. Some jurisdictions have refused to impose tort liability on a title insurance company or a commitment issuer. See Brown's Tie & Lumber v. Chi. Title Co. of Idaho, 764 P.2d 423 (Idaho 1988) (no claim in tort against both the title insurer and the title commitment issuer for negligent search of the title records); Greenberg v. Stewart Title Guar. Co., 492 N.W.2d 147 (Wis. 1992) (same). These courts reason that because a title insurer does not purport to act as anything other than an insurance company, no tort liability exists unless the insurer has voluntarily assumed a duty of searching title for the insured's benefit in addition to the contract to insure title. Greenberg, 492 N.W.2d at 151 ("'The title insurance company is not, as is an abstract company, employed to examine title; rather, the title insurance company is employed to guarantee the status of title and to insure against existing defects. Thus, the relationship between the parties is limited to that of indemnitor and indemnitee.'"). As to the title commitment issuer, they further conclude that the issuance of a preliminary report or title commitment is not an independent assumption of a duty to search and disclose reasonably discoverable defects and thus no liability in tort exists for the commitment issuer. Id.

Other jurisdictions have concluded that a title insurance company and the commitment issuer have duties in tort to search for and disclose all recorded title defects and base that duty on the relationship between the parties, rather than on any agreement between them. See Bank of Cal., N.A. v. First Am. Title Ins. Co., 826 P.2d 1126 (Alaska 1992) (holding that a title insurance company and a commitment issuer are subject to liability for negligent misrepresentation when the commitment issuer negligently supplies inaccurate information regarding the state of title in a preliminary commitment); Title Ins. Co. of Minn. v. Costain Ariz., Inc., 791 P.2d 1086, 1090 (Ariz. Ct. App. 1990) (remarking that a title company's duty in inspecting records and preparing title reports is distinct from its duty in issuing title insurance and the title company may be held liable in tort as long as the third party justifiably relies to its detriment); Shada v. Title & Trust

5

Co. of Fla., 457 So.2d 553, 557 (Fla. Dist. Ct. App. 1984) ("The use of a title . . . commitment instead of an abstract . . . has become commonplace. A title insurance company [which undertakes to prepare a title commitment] has a duty to exercise reasonable care when it issues a title binder or commitment and its failure to do so may subject it to liability in either contract or tort."); Ford v. Guarantee Abstract & Title Co., Inc., 553 P.2d 254, 258-59 (Kan. 1976) ("Where a title insurer presents a buyer with both a preliminary title report and a policy of title insurance two distinct responsibilities are assumed; in rendering the first service, the insurer serves as an abstractor of title and must list all matters of public record regarding the subject property in its preliminary report. When a title insurer breaches its duty to abstract title accurately it may be liable in tort for all the damages proximately caused by such breach."); Malinak v. Safeco Title Ins. Co. of Idaho, 661 P.2d 12, 15 (Mont. 1983) (qualifying the duty of care for a title insurer or a commitment issuer as one owed only when the title report or commitment is understood to serve as an abstract of title to be relied on by a title insurance company in issuing a title insurance policy); Tess v. Lawyers Title Ins. Corp., 557 N.W.2d 696, 705 (Neb. 1997) (holding that state statutes providing that a title insurance commitment or policy is not an abstract or a report of title do not protect a title insurance company or the commitment issuer from liability pursuant to Restatement (Second) of Torts § 552 for failing to exercise reasonable care in supplying information in the course of its own business). The theory is that once the title insurer or the commitment issuer assumes the responsibility of performing a title search and disclosing defects, either company may be liable in tort to all foreseeable third parties for failing to exercise reasonable care in supplying information in the course of its own business. See Bank of Cal., 826 P.2d 1126.

We have not had occasion to address this precise issue, but liability for the tort of negligent misrepresentation has been recognized in Indiana. Passmore v. Multi-Mgmt. Servs. Inc., 810 N.E.2d 1022, 1025 (Ind. 2004). In fact, we have said "negligent misrepresentation may be actionable and inflict only economic loss[,]" citing Restatement (Second) of Torts § 552. Greg Allen Constr. Co., Inc. v. Estelle, 798 N.E.2d 171, 174 (Ind. 2003). Restatement (Second) of Torts § 552(1), entitled Information Negligently Supplied for the Guidance of Others, provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecu-

6

niary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Id.

In the context of a claim for negligent misrepresentation in the construction industry, the Court of Appeals has clarified that Indiana's adoption of § 552 is not without limitation. See Thomas v. Lewis Eng'g, Inc., 848 N.E.2d 758, 760 (Ind. Ct. App. 2006). A professional may owe a duty to a third party with whom the professional has no contractual relationship, but the professional must have actual knowledge that such third person will rely on his professional opinion. Id. (stating that the actual knowledge prong requires contact between the professional and the third party, not mere foreseeablity that a third party may rely on the professional opinion).

Despite the recognition of the tort of negligent misrepresentation in Indiana, both the Court of Appeals and Integrity rely on our decision in Greg Allen for the proposition that any liability arising from Integrity's alleged breach of duty does not extend beyond its "mere failure to fulfill [its] contractual obligations" – whether as a party or a third party – to U.S. Bank. Greg Allen, 798 N.E.2d at 173. As such, the Court of Appeals held that a tort remedy was not available to U.S. Bank, since the parties had arranged their respective risks of loss by contract and tort law would not interfere. We believe reliance on Greg Allen is misplaced on these facts.

First, Greg Allen was a construction case, not a claim for negligent misrepresentation in the title insurance industry. In the context of the title insurance industry, Indiana courts have shown a willingness to go beyond the terms of the insurance contract to explore whether a duty might lie in tort as well as contract. See Altman v. Circle City Glass Corp., 484 N.E.2d 1296, 1300 (Ind. Ct. App. 1985) ("In addition to liability under the policy, the title insurance company might have been liable for negligence in performing the title search and examination if it had failed to list a potential adverse interest."), trans. denied; Lawyers Title Ins. Corp. v. Capp, 174 Ind. App. 633, 637 n.1, 369 N.E.2d 672, 674 n.1 (1977) (suggesting a duty of care and potential tortious cause of action for negligence on the part of one examining an abstract of title and preparing an opinion therefrom).

7

Beyond this, the reasoning of <u>Greg Allen</u> does not support the conclusion that a tort duty cannot exist where a contract is executed for the provision of title insurance. In <u>Greg Allen,</u> we noted in dicta that "[While] [t]he issue is . . . sometimes framed as whether the [tort] duty arises solely from contract[,] . . .[p]utting the issue in terms of the source of the duties . . . is largely tautological." 798 N.E.2d at 174-75. Rather, "[a] defendant's exposure to tort liability is best framed in terms of what the defendant did. . . . To the extent that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations, a tort remedy should be available." <u>Id.</u> at 173.

Moreover, consistent with our opinion in <u>Indianapolis-Marion County Public Library</u>, the existence or non-existence of a contract is not the dispositive factor for determining whether a tort action is allowable where special circumstances and overriding public policies have carved out exceptions for tort liability. As we noted there, Professor Mark P. Gergen provides some helpful considerations relevant to determining the existence of a tort duty for negligent misrepresentation as part of a recent project of the American Law Institute:

> the usual cost and difficulty of ensuring the accuracy of the information . . .; the usual size of the loss if the information is false; whether the actor is compensated for supplying the information; whether the actor is in the business of supplying the information; whether imposing liability is likely to dry up a source of useful information because the expected cost of liability is disproportionate to the expected benefit to the actor of supplying the information…; the ability of the recipient to determine the accuracy of the information itself; whether the actor affirmatively vouches for the accuracy of the information or its use of care in supplying the information; whether people in the circumstances of the case usually could and generally do determine responsibility for such loss by contract; whether other bodies of law are better suited to determining the actor's liability; the superiority of the actor's knowledge or expertise; whether the information is given deliberately; whether the information is given in response to a request by the claimant; the specificity or generality of the information; whether the misstatement is by commission or omission; whether the information is supplied to guide the claimant in a transaction with another; and whether the relationship between the actor and claimant is adversarial or advisory.

Restatement (Third) of Economic Torts and Related Wrongs § 9, Cmt. f (Council Draft No. 2, 2007). Professor Gergen, the author of the Council Draft,[5] goes on to say that "[a]n actor may undertake a duty when it supplies specific information in response to a specific request that makes it clear the recipient intends to attach significant importance to the information in making a decision that exposes the recipient to a risk of loss if the information is inaccurate." Id.

Applying these factors, we conclude that Integrity had a duty under Restatement § 552 to communicate the state of a title accurately when issuing its preliminary commitment. We find the reasoning of Justice Matthews of the Alaska Supreme Court in Bank of California persuasive:

> We agree with the authorities which hold that there may be tort liability for misrepresentations made in preliminary commitments for title insurance. In our view, such commitments provide an essential service to prospective buyers and lenders. They are told what transactions must take place before they can receive clear title or an effective security.

826 P.2d at 1129.[6] In reaching this conclusion, the court stressed that "preliminary title reports are normally relied on by insureds, escrow agents, and lenders with full knowledge, and sometimes with the encouragement, of the insurance company." Id. Title searches are frequently required in situations involving transactions in which the state of the title must be known accurately or the customer will foreseeably suffer harm that is both certain and direct. See Patton and Palomar on Land Titles § 41.

> [T]itle insurers give a preliminary commitment to property purchasers or [lenders] before the closing of the real estate transaction. The buyer or lender then may negotiate with the seller or borrower for the removal or any listed title defects, bargain to pay a lower amount to take subject to those risks, or rescind the transaction. . . . The buyer or lender who receives a clear preliminary commitment at this stage of the transaction perceives it to be a representation that the

---

[5] As discussed in Indianapolis-Marion County Public Library, – N.E.2d at –, slip op. 5-6, nn. 5 & 6, this Council Draft was not adopted by the Council of the American Law Institute.

[6] Although the rationale used by Justice Matthews is persuasive, we reiterate the importance of the lack of contractual privity between Integrity and U.S. Bank, and we do not adopt the proposition that a tort claim for negligent misrepresentation may be brought where the parties are in contractual privity.

> seller or borrower has a clear title and may close the transaction in reliance upon it[.]

Id. Integrity should have known that Texcorp (U.S. Bank's predecessor in interest), in closing the loan to buyer, would act in justifiable reliance on the statement in the preliminary commitment that title was free and clear of any encumbrances. In fact, supporting affidavits established that Texcorp directly communicated with Integrity and instructed Integrity to prepare a title commitment, conduct the mortgage closing, and provide an insured first and superior mortgage lien against the subject real property. Armed with direct knowledge of Texcorp's interests and requirement of accurate title information to guide its lending practices, Integrity prepared the title commitment that indicated that it had performed a title search on the subject property and had found no prior judgment liens. In justifiable reliance on the commitment, Texcorp approved the mortgage loan in the amount of $123,090.00, and Integrity provided Texcorp with the Policy which insured a first and superior mortgage against the real estate.

Second, the other factors advanced by Professor Gergen also suggest finding a duty in tort on these facts. Here, the relationship between Integrity and Texcorp was of an advisory nature. Integrity had superior knowledge and expertise, was in the business of supplying title information, and was compensated for the information it provided to Texcorp. Integrity deliberately provided specific information in response to a request by Texcorp, to guide Texcorp in its transaction with a third party, and Integrity affirmatively vouched for the accuracy of the information. On these facts, we are convinced that applicable tort law permits U.S. Bank's tort claim to go forward.

**Conclusion**

We affirm the judgment of the trial court with respect to its grant of Integrity's motion for summary judgment on U.S. Bank's contract claim and reverse with respect to the trial court's grant of Integrity's motion for summary judgment on U.S. Bank's tort claim. This matter is remanded to the trial court for further proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.