# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 22 2020, 8:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Curtis Pearman
Lake Placid, Indiana

ATTORNEYS FOR APPELLEE

John C. Trimble
Michael R. Giordano
Lewis Wagner, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Curtis Pearman, *Appellant-Plaintiff,* <br><br> v. <br><br> Hale Abstract Company, Inc., *Appellee-Defendant.* | October 22, 2020 <br><br> Court of Appeals Case No. 20A-PL-733 <br><br> Appeal from the Shelby Circuit Court <br><br> The Honorable Trent E. Meltzer, Judge <br><br> Trial Court Cause No. 73C01-1406-PL-18 |

**Bradford, Chief Judge.**

# Case Summary

[1] This case involves Curtis Pearman's attempt to purchase certain real estate in Shelbyville, Indiana, known as the Tippecanoe Press Building complex ("the Tippecanoe Press complex"). Pearman agreed to pay the Federal Deposit Insurance Corporation ("FDIC") $5000 for a package that he believed included three parcels of land. Pearman, however, actually only purchased two parcels as the FDIC only held title to two of the three parcels. Pearman subsequently filed suit against Hale Abstract Company, Inc. ("Hale"), arguing that in completing title work regarding the Tippecanoe Press complex prior to his purchase of the property, Hale negligently misrepresented that the FDIC held title to all three parcels.

[2] The trial court determined that Hale, in the course of its business, supplied false information to Pearman and that Pearman justifiably relied upon the information supplied by Hale. However, the trial court determined that Pearman did not suffer a pecuniary loss as a result of the misrepresentation. The trial court alternatively determined that even if Pearman had suffered a pecuniary loss, any loss suffered by Pearman was no greater than $16,692.00 and Pearman was not entitled to any additional recovery because he had been made whole by insurance proceeds he received from Stewart Title Guaranty Company ("STGC"). Pearman contends on appeal that the trial court erred in determining that he was not entitled to additional recovery. We affirm.

# Facts and Procedural History

This is the second appeal relating to issues that arose from Pearman's purchase of the Tippecanoe Press complex. The underlying facts relating to the sale and the issues that arose therefrom were set forth in our opinion in the prior appeal:

> Originally, the Wickizer Family Trust owned the real estate, which consisted of four separate parcels. Shelby County Bank subsequently obtained title to three of these parcels. The first parcel was a thirty-thousand-square-foot commercial complex; the second parcel was a private alley; and the third parcel ("Parcel 3"), which is at issue here, contained a garage and parking spaces. Shelby County Bank was later placed in receivership, with the [FDIC] acting as receiver.
>
> In 2013, Pearman sought to purchase the three parcels owned by FDIC. On August 28, 2013, [Hale] procured a title commitment from STGC regarding the three parcels. However, Parcel 3 had been sold to a nearby church by Shelby County Bank prior to its being placed in receivership. Pearman eventually paid FDIC $5,000 for a quitclaim deed to what he believed contained all three parcels. And STGC issued a title policy on October 16, 2013, for all three parcels.
>
> When Pearman learned that he did not have title to Parcel 3, he submitted a claim under the policy for Parcel 3 to STGC on January 10, 2014. On January 14, 2014, STGC sent Pearman notice that it had appointed a claims counsel to review his claim. On June 24, 2014, STGC's claims counsel offered to settle the matter for $8,000 in exchange for a release from liability regarding Parcel 3.
>
> Pearman did not accept the offer but filed a complaint against Hale and STGC on June 27, 2014. The complaint sought a declaratory judgment that STGC had a duty to indemnify Pearman under the Policy and that STGC negligently misrepresented the status of the title to Parcel 3. The complaint

also included a claim for breach of contract based on the Policy, a claim of damages as a result of the defendants' negligent misrepresentation, and a claim for attorney fees.

STGC and Hale obtained an appraisal of Parcel 3, which determined that the value of the other parcels without Parcel 3 was diminished by $30,000. The defendants then offered to settle the case for this amount, but Pearman again declined the offer. Eventually, STGC made a litigation decision to file a counterclaim for a declaratory judgment, asking the trial court to approve the tender of the $70,000 policy limits to Pearman and end any further litigation, effectively interpleading the policy limits.

On December 19, 2016, Pearman filed a motion for summary judgment, and on January 17, 2017, STGC filed a response and a cross-motion for summary judgment. The trial court held a hearing on both motions on January 18, 2017. On March 22, 2017, the trial court entered findings of fact and conclusions of law granting STGC's motion for summary judgment, thereby entering an award of the $70,000 policy limits to Pearman. The court's summary judgment order otherwise denied Pearman's motion for summary judgment as to its claims against STGC.

*Pearman v. Stewart Title Guar. Co.*, 108 N.E.3d 342, 345–46 (Ind. Ct. App. 2018), *trans. denied*.

[4] As it related to Hale, the trial court found that Pearman had established that (1) "Hale, in the course of its business, supplied false information for the guidance of [Pearman] in his business transaction;" (2) "Hale failed to exercise reasonable care or competence in obtaining or communicating the information to" Pearman; and (3) Pearman "justifiably relied upon the information supplied by" Hale. Appellant's App. Vol. II p. 36. The trial court further found that

"[t]he issues of the type of damages, if any, recoverable by [Pearman] and against [Hale] shall be determined at a later date." Appellant's App. Vol. II p. 37.

[5] Pearman appealed the trial court's order pertaining to STGC. We affirmed the trial court's order concluding as follows:

> The trial court did not err in granting summary judgment in favor of STGC on Pearman's claim of negligent misrepresentation because Pearman is in contractual privity with STGC, and a claim of negligent misrepresentation is therefore unavailable to him. Nor did the trial court err in granting summary judgment in favor of STGC on Pearman's claim of insurer bad faith because Pearman did not present a claim of bad faith in his complaint. The trial court did not err in declining Pearman's request for attorney fees, and Pearman's claim for punitive damages cannot be presented for the first time on appeal.

*Pearman*, 108 N.E.3d at 350–51.

[6] Pearman and Hale subsequently filed briefs in the trial court arguing the issue of damages.[1] On January 22, 2020,[2] the trial court issued an order, in which it incorporated its previous March 22, 2017 order by reference, and found as follows:

---

[1] Pearman claims that he was not served with a copy of Hale's submission to the trial court. However, the certificate of service attached to Hale's submission indicates that Pearman was served "electronically by using the Court's IEFS System and U.S. Postal Service, pre-paid delivery for those parties not yet registered." Appellee's App. Vol. II p. 181.

[2] While the trial court's order was dated January 21, 2020, it was not marked as filed until January 22, 2020.

4.  This Court has previously found that [Pearman] is only entitled to his out-of-pocket loss and is not entitled to benefit-of-the-bargain damages.

5.  This Court has previously found that [Pearman] incurred $16,692.00 in expenses and received property worth $250,000.00.

6.  The Court now finds that [Pearman] did not suffer a pecuniary loss.

7.  [Pearman] has been paid $70,000.00 by Co-Defendant [STGC].

8.  The Court further finds in the alternative that if [Pearman] did suffer a pecuniary loss, said loss is no greater than $16,692.00, and [Pearman] has been made whole, and is not entitled to any additional recovery.

Appellee's App. Vol. II pp. 204–05.  On February 21, 2020, Pearman filed a combined motion to (1) vacate and reverse the trial court's January 22, 2020 order and (2) strike Hale's allegedly defective summary response.  The trial court denied both of these motions on February 26, 2020.

# Discussion and Decision

[7]     Pearman contends that the trial court erred in determining that he was not entitled to additional compensation from Hale.  In doing so, he relies on his claim that Hale negligently represented that the FDIC owned Parcel 3 and that he justifiably relied on Hale's negligent representation.  For its part, Hale acknowledges that the trial court found that that (1) "Hale, in the course of its business, supplied false information for the guidance of [Pearman] in his

business transaction;" (2) "Hale failed to exercise reasonable care or competence in obtaining or communicating the information to" Pearman; and (3) Pearman "justifiably relied upon the information supplied by" Hale. Appellant's App. Vol. II p. 36. Hale argues, however, that the trial court correctly determined that Pearman was not entitled to any additional compensation because the designated evidence establishes that Pearman did not suffer a pecuniary loss.

## I. Negligent Misrepresentation

[8] "Indiana has recognized liability for the tort of negligent misrepresentation, where there is a direct relationship between the plaintiff and the defendant." *Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004). The Indiana Supreme Court has held that

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, *is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information*, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010) (quoting Restatement (Second) of Torts § 552 (1977)) (emphasis added). In *Integrity*, the Indiana Supreme Court concluded that a title company has "a duty under Restatement § 552 to communicate the state of a title accurately when issuing its preliminary commitment." 929 N.E.2d at 749.

It is undisputed that Hale violated this duty when it inaccurately informed Pearman that the FDIC held title to Parcel 3. However, in order to recover from Hale under a theory of negligent misrepresentation, Pearman must also prove that he suffered a pecuniary loss as a result of his reliance on Hale's inaccurate statement. A pecuniary loss is "[a] loss of money or something having monetary value." BLACK'S LAW DICTIONARY 1088 (10th ed. 2014); see also *American Leasing, Inc. v. Maple*, 406 N.E.2d 333, 335 (Ind. Ct. App. 1980) ("A pecuniary loss has been described as a loss of money, or of something by which money, or something of money value may be acquired.").

Pearman argues that Hale is liable "for all the damages proximately caused by" its errors. Appellant's Br. p. 30 (emphasis omitted). Pearman, however, has pointed to, and we are aware of, no authority in support of this argument. For its part, Hale argues that "[t]he measure of damages for … negligent misrepresentation is 'out-of-pocket expenses[.]'" Appellee's Br. p. 17. Hale further argues that because "Pearman incurred $16,692 in out-of-pocket expenses to complete his purchase of the Real Estate, which was worth $250,000 even without Parcel III[,] Pearman suffered no pecuniary loss because the Real Estate he received (Parcels I and II) is worth nearly 15 times more than the amount he incurred to purchase it." Appellee's Br. p. 17.

As the Seventh Circuit Court of Appeals has noted, "the Restatement adopts the 'out-of-pocket' rule as the appropriate measure of damages for negligent misrepresentation and specifically excludes 'benefit-of-the-bargain' damages.… The out-of-pocket rule looks to the loss which the plaintiff has suffered in the

transaction, and gives him the difference between the value of what he has parted with and the value of what he has received." *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 722 (7th Cir. 1994) (internal quotation omitted). The Court of Appeals of Washington applied the rule adopted by the Restatement in *Janda v. Brier Reality*, 984 P.2d 412, 415 (Was. Ct. App. 1999), concluding that a real estate investor's claim for negligent misrepresentation failed because he suffered no pecuniary loss as a result of another realtor's misrepresentation as the properties in question were worth more than the amount the investor paid for them. Specifically, the Washington Court concluded:

> Assuming [the realtor] negligently misrepresented the cost to subdivide, the evidence does not establish that [the investor] suffered any damages that are recoverable under [the Restatement]. [The investor] paid $133,000 for the 27th Avenue West property. According to [the investor's] own declaration, the value of the property, based on a cost to subdivide of $55,000, was $143,000. Thus, there is no damage for which the Restatement permits recovery. Moreover, [the investor] subdivided this property and sold both lots without incurring any of the cost of subdividing.
>
> Similarly, [the investor] paid $132,000 for the Allview Way property. [The investor] claims the value of the property, based on a $35,000 cost to subdivide, was $162,000. He sold it for $141,000. Again, he suffered no recoverable damage. The Restatement, adopted in Washington, does not permit [the investor] to recover, as he seeks to do, the greater profit he claims he would have realized had [the realtor] properly represented the cost of subdividing the two properties.

*Id*. We find the Washington Court's conclusion to be persuasive.

In this case, the trial court found that Pearman incurred a total of $16,692 in out-of-pocket expenses in connection to his purchase of the Tippecanoe Press complex. Pearman does not dispute this number and concedes that he purchased the Tippecanoe Press complex for "much less than its true value." Appellant's Br. p. 5. The undisputed evidence also indicates that Parcels I and II were worth $250,000. Thus, the undisputed evidence demonstrates that Parcels I and II were worth $233,308 more than the $16,692 out-of-pocket expenses paid by Pearman in purchasing the Tippecanoe Press complex. We therefore conclude that, like the investor in *Janda*, Pearman did not suffer a pecuniary loss as a result of his reliance on Hale's title search.

## II. Breach of Contract & Constructive Fraud

Pearman also argues that Hale committed breach of contract and constructive fraud. However, Pearman did not include either of these claims in his complaint against Hale. "[A] party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *Sedona Dev. Grp., Inc. v. Merrillville Rd.*, 801 N.E.2d 1274, 1280 (Ind. Ct. App. 2004) (citing *GKC Ind. Theatres, Inc. v. Elk Retail Inv'rs, LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002)). The only claim Pearman raised against Hale in the trial court was a claim of negligent misrepresentation. He has therefore waived his claims of breach of contract and constructive fraud.

# III. Hale's Request for Appellate Attorney's Fees

[14] Hale seeks to recover attorney's fees for funds expended responding to what it characterizes as a frivolous, bad-faith appeal.

> Indiana Appellate Rule 66(E) provides, in pertinent part, "[t]he Court may assess damages if an appeal … is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees."  Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.  *Orr v. Turco Mfg. Co., Inc.*, 512 N.E.2d 151, 152 (Ind. 1987). Additionally, while Indiana Appellate Rule 66(E) provides this Court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal.  *Tioga Pines Living Ctr., Inc. v. Indiana Family and Social Svcs. Admin.*, 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), *trans. denied*.

*Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003).

[15] In requesting appellate attorney's fees, Hale argues that Pearman's appellate brief and appendix do not comply with the Appellate Rules of Procedure. Specifically, Hale argues that (1) Pearman's appellate brief lacks cogent arguments and citation to the record and relevant authority, (2) Pearman misstated and omitted material facts, (3) Pearman's appendix is "inexcusably deficient," and (4) Pearman's brief contains numerous false accusations about Hale and its counsel.  Appellee's Br. p. 32.  While we acknowledge that Pearman's appellate brief may, in some respects, fail to comply with the

Appellate Rules of Procedure, we are reluctant to characterize Pearman's arguments on appeal as frivolous or made in bad faith. As such, we deny Hale's request for appellate attorney's fees.

[16] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.