## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 27 2018, 8:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
| --- | --- |
| Curtis Pearman | Scott J. Fandre |
| Naples, Florida | Krieg DeVault, LLP |
| | Mishawaka, Indiana |

## I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Curtis Pearman, | June 27, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 73A05-1708-PL-2040 |
| v. | Appeal from the Shelby Circuit Court |
| Stewart Title Guaranty Company, | The Honorable Charles D. O'Connor, Jr., Judge |
| *Appellee-Defendant.* | Trial Court Cause No. 73C01-1406-PL-18 |

**Mathias, Judge.**

[1] Curtis Pearman ("Pearman") appeals the order of the Shelby Circuit Court granting summary judgment in favor of Stewart Title Guaranty Company ("STGC") in Pearman's claim for extra-contractual damages arising out of a

title insurance policy issued by STGC to Pearman. On appeal, Pearman presents eleven issues, which we consolidate and restate as the following four:

I. Whether the trial court erred in granting summary judgment against Pearman on his claim of negligent misrepresentation against STGC;

II. Whether the trial court erred in granting summary judgment against Pearman on his claim of insurer bad faith against STGC;

III. Whether the trial court erred by failing to grant attorney fees to Pearman; and

IV. Whether the trial court erred by failing to grant punitive damages to Pearman.

[2] We affirm.

## Facts and Procedural History

[3] This case involves Pearman's attempt to purchase certain real estate in Shelbyville, Indiana, known as the Tippecanoe Press Building complex. Originally, the Wickizer Family Trust owned the real estate, which consisted of four separate parcels. Shelby County Bank subsequently obtained title to three of these parcels. The first parcel was a thirty-thousand-square-foot commercial complex; the second parcel was a private alley; and the third parcel ("Parcel 3"), which is at issue here, contained a garage and parking spaces. Shelby County Bank was later placed in receivership, with the Federal Deposit Insurance Corporation ("FDIC") acting as receiver.

[4] In 2013, Pearman sought to purchase the three parcels owned by FDIC.[1] On August 28, 2013, Hale Abstract Company, Inc. ("Hale") procured a title commitment[2] from STGC regarding the three parcels. However, Parcel 3 had been sold to a nearby church by Shelby County Bank prior to its being placed in receivership. Pearman eventually paid FDIC $5,000 for a quitclaim deed to what he believed contained all three parcels. And STGC issued a title policy on October 16, 2013, for all three parcels.

[5] When Pearman learned that he did not have title to Parcel 3, he submitted a claim under the policy for Parcel 3 to STGC on January 10, 2014. On January 14, 2014, STGC sent Pearman notice that it had appointed a claims counsel to review his claim. On June 24, 2014, STGC's claims counsel offered to settle the matter for $8,000 in exchange for a release from liability regarding Parcel 3.

---

[1] Pearman claims that he hoped to purchase the fourth parcel from the Wickizer Trust.

[2] As explained in *Izynski v. Chicago Title Insurance Co.*, 963 N.E.2d 592 (Ind. Ct. App. 2012), *trans. denied*:

> A title commitment is a document that describes the property as the title insurer is willing to insure it and contains the same exclusions and general and specific exceptions as later appear in the title insurance policy. Ordinarily a commitment is ordered by the seller for the purpose of exhibiting it to the buyer as a representation of the quality of the title seller expects to sell to the buyer. A title commitment naturally contemplates a search by the title insurer of the chain of title, an opinion by an expert of what the search reveals, a guaranty that the search was accurate and that the title commitment expresses the quality of the title of the seller as shown by the record. The person who seeks a title insurance commitment expects to obtain a professional title search, as well as a professional legal opinion as to the condition of the title and a guaranty that the title expressed in the commitment will be insured to the extent of the policy coverage. The title insurer does not agree to clear the title; rather by its commitment, the title company agrees to afford coverage in a title policy later to be issued insuring the title according to its commitment.

*Id.* at 594 (citations omitted). Here, STGC issued an initial title commitment, then later issued a title policy.

[6]     Pearman did not accept the offer but filed a complaint against Hale and STGC on June 27, 2014. The complaint sought a declaratory judgment that STGC had a duty to indemnify Pearman under the Policy and that STGC negligently misrepresented the status of the title to Parcel 3. The complaint also included a claim for breach of contract based on the Policy, a claim of damages as a result of the defendants' negligent misrepresentation, and a claim for attorney fees.

[7]     STGC and Hale obtained an appraisal of Parcel 3, which determined that the value of the other parcels without Parcel 3 was diminished by $30,000. The defendants then offered to settle the case for this amount, but Pearman again declined the offer. Eventually, STGC made a litigation decision to file a counterclaim for a declaratory judgment, asking the trial court to approve the tender of the $70,000 policy limits to Pearman and end any further litigation, effectively interpleading the policy limits.

[8]     On December 19, 2016, Pearman filed a motion for summary judgment, and on January 17, 2017, STGC filed a response and a cross-motion for summary judgment. The trial court held a hearing on both motions on January 18, 2017. On March 22, 2017, the trial court entered findings of fact and conclusions of law granting STGC's motion for summary judgment, thereby entering an award of the $70,000 policy limits to Pearman. The court's summary judgment order

otherwise denied Pearman's motion for summary judgment as to its claims against STGC.[3]

[9] On April 20, 2017, Pearman filed a motion to correct error. Five days later, the court set the matter for a hearing to be held on May 31, 2017. STGC filed a response to Pearman's motion on May 8, 2017. On May 31, 2017, the trial court held a hearing on Pearman's motion to correct error. On June 29, 2017, the trial court entered an order on its chronological case summary ("CCS") stating that it was, pursuant to its authority under Indiana Trial Rule 53.3, extending the deadline for its ruling on the motion to correct error to July 31, 2017. The trial court then entered its order denying Pearman's motion to correct error on that date. Pearman filed his notice of appeal on August 24, 2017, and this appeal ensued.[4]

## Standard of Review

[10] Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled. A trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Altevogt v. Brand*, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012) (citing Ind. Trial Rule 56(C)). The trial court's grant of a motion for summary judgment

---

[3] The trial court's order granted summary judgment in favor of Pearman on certain claims against Hale.

[4] Pearman has proceeded *pro se* at the summary judgment proceedings and on appeal. Indiana courts have long held that *pro se* litigants are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016) *reh'g denied*.

comes to us cloaked with a presumption of validity. *Id*. "'An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.'" *Id*. (quoting *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010)). However, a *de novo* standard of review applies where the dispute is one of law rather than fact. *Id*. On appeal, we examine only those materials designated to the trial court on the motion for summary judgment, and we must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record. *Id*.

## I. Negligent Misrepresentation

[11] Pearman first argues that the trial court erred as a matter of law for not finding STGC liable for negligent misrepresentation in its title commitment. Pearman notes that the trial court found Hale liable for negligent misrepresentation, but failed to make a similar determination of liability with regard to STGC.

[12] The tort of negligent misrepresentation has been described as follows:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010) (quoting Restatement (Second) of Torts § 552 (1977)).

[13] In *U.S. Bank*, our supreme court considered the issue of whether a title insurer could be liable under a theory of negligent misrepresentation, separate and apart from the contractual obligations of the title policy itself. In addressing this question, the court first noted that:

> We agree with the authorities which hold that there may be tort liability for misrepresentations made in preliminary commitments for title insurance. In our view, such commitments provide an essential service to prospective buyers and lenders. They are told what transactions must take place before they can receive clear title or an effective security.

*U.S. Bank*, 929 N.E.2d at 749 (quoting *Bank of California, N.A. v. First Am. Title Ins. Co.*, 826 P.2d 1126, 1129 (Alaska 1992)).

[14] The *U.S. Bank* court also observed that insureds, escrow agents, and lenders typically rely on preliminary title reports. 929 N.E.2d at 749. Title insurance companies not only have full knowledge of this reliance but also encourage such reliance. *Id*. "Title searches are frequently required in situations involving transactions in which the state of the title must be known accurately or the customer foreseeably will suffer harm that is both certain and direct." *Izynski v. Chicago Title Ins. Co.*, 963 N.E.2d 592, 597 (Ind. Ct. App. 2012) (citing *U.S. Bank*, 929 N.E.2d at 749), *trans. denied*. "Title insurers give a preliminary commitment to property purchasers or lenders before the closing of the real estate transaction. The buyer or lender then may negotiate with the seller or

borrower for the removal of any listed title defects, bargain to pay a lower amount to take subject to those risks, or rescind the transaction." *Id*. (citing *U.S. Bank*, 929 N.E.2d at 749). Thus, a buyer or lender who receives a clear preliminary commitment at this stage of the transaction perceives it to be a representation that the seller or borrower has a clear title and may close the transaction in reliance upon it. *Id*. (citing *U.S. Bank*, 929 N.E.2d at 749). All of this would, at first blush, seem to support Pearman's claim.

[15] Importantly, however, the *U.S. Bank* court held that a title insurance company could be held liable to a lender under the theory of negligent misrepresentation "if the title company and the lender did *not* have a contractual relationship." *Id*. (emphasis added) (citing *U.S. Bank*, 929 N.E.2d at 745). In *U.S. Bank*, the lender, Integrity, argued that it was *not* in contractual privity with U.S. Bank. 929 N.E.2d at 745. "This," our supreme court held, was "a critical point." *Id*. The court held that, "[w]ere there to be a contract between Integrity and U.S. Bank, the parties in all likelihood would be relegated to their contractual remedies." *Id*. Indeed, the *U.S. Bank* court explicitly declined to "adopt the proposition that a tort claim for negligent misrepresentation may be brought where the parties are in contractual privity." *Id*. at 749 n.6.

[16] Here, there is no genuine issue of material fact regarding whether Pearman and STGC are in contractual privity. They are. STGC issued the title commitment to Pearman, and the title insurance policy lists Pearman as the named insured. Thus, pursuant to *U.S. Bank*, Pearman may not bring a claim of negligent misrepresentation against STGC because the parties are in contractual privity.

*See id.*; *cf. Izynski*, 963 N.E.2d at 597 (holding that buyers were not in contractual privity with title insurance company at the time they agreed to purchase the property because the title commitment had been issued to a different prospective buyer and that buyers could therefore sue title insurer for negligent misrepresentation). We therefore cannot say that the trial court erred by granting summary judgment in favor of STGC with regard to negligent misrepresentation.[5]

## II. Bad Faith

[17]    Pearman also claims that the trial court should have found STGC liable for various acts of bad faith. "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman ex rel. Smith*, 622 N.E.2d 515, 518 (Ind. 1993).

> An insurance company's duty of good faith and fair dealing includes the obligation to refrain from: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. To prove bad faith, the plaintiff must establish by clear and convincing evidence that the insurer had knowledge that

---

[5] In his argument regarding negligent misrepresentation, Pearman cites *Dreibelbiss Title Co. v. MorEquity, Inc.*, 861 N.E.2d 1218 (Ind. Ct. App. 2007), *trans. denied*, for the proposition that the policy limits do not control the amount of damages. *See id.* at 1222 n.5 (noting that we have previously held that "'policy limits restrict the amount the insurer may have to pay in the *performance* of the contract, not the damages that are recoverable for its breach." (quoting *Ind. Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind. Ct. App. 1992) (emphasis added in *Dreibelbiss*)). We find *Dreibelbiss* to be inapposite here, as Pearman may not bring a claim of negligent misrepresentation at all, and we are therefore not dealing with the issue of the damages he might recover.

there was no legitimate basis for denying liability. Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. Thus, [a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.

*Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 302 (Ind. Ct. App. 2015) (citations and internal quotations omitted).

[18] Here, however, Pearman's did not bring a claim of bad faith against STGC in his complaint. In fact, bad faith is not mentioned in his complaint at all. A claim that is not pleaded cannot be presented for the first time in a motion for summary judgment. *See 5200 Keystone Ltd. Realty, LLC v. Filmcraft Labs., Inc.*, 30 N.E.3d 5, 12 (Ind. Ct. App. 2015).

[19] Pearman relies upon paragraph 38 of his complaint, which is under the declaratory judgment section of the complaint and provides as follows:

> 38. Pearman seeks a declaration from the court whether Stewart has committed a tort separate and distinct from any contractual obligations of Stewart for failure of the Commitment and/or Policy to disclose the 2008 Deed, The First Baptist Church of Shelbyville Indiana's interest in Parcel III, and the Tax Parcel.

Appellant's App. Vol. 2, p. 46. However, asking the court to declare that STGC committed a tort is not equivalent to adequately pleading a claim of insurer bad faith.

[20] Pearman also claims that he put STGC on notice of his bad faith claims in paragraphs 40 and 43 of his complaint. These paragraphs provide:

40. Stewart has failed to perform by wrongfully refusing to indemnify Pearman and has failed to acknowledge Stewart's responsibilities for liabilities arising from Parcel III and the 2008 Deed, *which constitutes a breach of the Policy*.

* * *

43. Pearman has performed all conditions precedent *to recover under the Policy and Commitment*: Pearman has not excused Stewart's non-performance.

*Id*. at pp. 46–47 (emphases added).

[21] These paragraphs are set forth under Count II of the complaint, which alleges a breach of contract. These paragraphs allege a breach of the Policy and the right to recover under the Policy, respectively. There is nothing alleged in these paragraphs, or the rest of the complaint, that would have put STGC on notice that Stewart was seeking recovery under a theory of insurer bad faith. *See Shields v. Taylor*, 976 N.E.2d 1237, 1245 (Ind. Ct. App. 2012) (holding that, under notice pleading, the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it).

[22] Nor is there any indication that STGC impliedly consented to trying the newly raised issue of bad faith. To the contrary, when Pearman first raised the issue of bad faith in his cross-motion for summary judgment, STGC argued in its response thereto that Pearman had not pleaded a claim of insurer bad faith and could not obtain summary judgment in his favor for this reason. Appellant's

App. Vol. 4, p. 40; *See also 5200 Keystone Ltd.*, 30 N.E.3d at 13 (holding that common-law remedies were unavailable to plaintiff where plaintiff did not plead any common-law theory of relief and instead presented the issue for the first time in its brief opposing summary judgment and that defendant did not impliedly consent to the non-pleaded issue where defendant objected to the newly raised issues). We therefore conclude that the trial court did not err in rejecting Pearman's claims of insurer bad faith.

## III. Attorney Fees

[23] As part of his argument regarding bad faith, Pearman also claims that the trial court erred by not granting him attorney fees. Indiana follows the American Rule, whereby each party pays his or her own attorney fees. *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 205 (Ind. Ct. App. 2005), *trans. denied*. Thus, an award of attorney fees is not permissible in the absence of a statute or some agreement or stipulation authorizing such an award. *Id*. Pearman refers to no statute or agreement that would permit the trial court to award attorney fees in this case.[6] STGC notes that its Policy provided for payment of attorney fees only in one specific circumstance, i.e., when a third party asserted a claim covered by the policy adverse to the insured.[7] Here, no such third party has

---

[6] The only authority Pearman cites in support of his claim for attorney fees is *American Family Mutual Insurance Co. v. C.M.A. Mortgage, Inc.*, 682 F. Supp. 2d 879 (S.D. Ind. 2010). However, that case has nothing to do with attorney fees. Instead, at issue was whether the insurance company was required to pay a settlement entered into by its insured without the consent of the insurance company. *Id.* at 890.

[7] Specifically, Paragraph 5(a) of the Conditions of the Policy, under the title "Determination and Extent of Liability," provided:

asserted a claim against Pearman. Accordingly, we cannot say that the trial court erred in denying his request for attorney fees.

## IV. Punitive Damages

[24] Pearman also claims that STGC should be subject to punitive damages based on its behavior in this case. Again, however, Pearman did not include a claim for punitive damages in his complaint. Nor did he raise the issue of punitive damages in his cross-motion for summary judgment. As we explained in *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC*:

> As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. Consequently, an argument or

---

Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

Appellant's App. Vol 2, p. 106.

issue not presented to the trial court is generally waived for appellate review.

764 N.E.2d 647, 651 (Ind. Ct. App. 2002) (citations omitted). Because Pearman did not present this issue below, he may not do so for the first time on appeal.

## Conclusion

[25] The trial court did not err in granting summary judgment in favor of STGC on Pearman's claim of negligent misrepresentation because Pearman is in contractual privity with STGC, and a claim of negligent misrepresentation is therefore unavailable to him. Nor did the trial court err in granting summary judgment in favor of STGC on Pearman's claim of insurer bad faith because Pearman did not present a claim of bad faith in his complaint. The trial court did not err in declining Pearman's request for attorney fees, and Pearman's claim for punitive damages cannot be presented for the first time on appeal. We therefore affirm the trial court's judgment.

[26] Affirmed.

Najam, J., and Barnes, S.J., concur.