



FILED
Jun 26 2025, 11:46 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-CT-435

## Zainab Abbas, M.D., Morgan Mittler, R.N., and Methodist Hospital,

*Appellants/Cross-Appellees (Defendants below)*

—v—

## Hetep Bilal Neter-Nu,

*Appellee/Cross-Appellant (Plaintiff below)*

---

Argued: January 23, 2025 | Decided: June 26, 2025

Appeal from the Lake Superior Court
No. 45D11-1809-CT-541
The Honorable Bruce D. Parent, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CT-438

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

Hetep Bilal "Franklyn" Neter-Nu stopped at Methodist Hospital complaining of nausea and vomiting. He ended up with an amputated foot three weeks later. Neter-Nu sued the hospital, Dr. Zainab Abbas, and Nurse Morgan Mittler (collectively "Health Care Providers" or "Providers"). A jury returned a verdict in favor of Neter-Nu. Providers raise several claims related to certain evidentiary issues and jury instructions, among others. We hold that the trial court erred when it denied Methodist's Trial Rule 50(A) motion for partial judgment on the evidence and when it calculated prejudgment interest. But the trial court did not abuse its discretion in declining to give Providers' proposed jury instructions and excluding certain evidence. Therefore, we affirm the jury verdict but reverse and remand with instructions to grant Methodist's Rule 50(A) motion and recalculate prejudgment interest based on the Providers' statutory liability.

# Facts and Procedural History

Franklyn Neter-Nu was a truck driver who checked into the emergency room at Methodist Hospital in Gary, Indiana, on July 27, 2015, complaining of nausea and vomiting. He was given fluids and medications through an IV, but his attending nurse, Nurse Mittler, twice found the IV detached from Neter-Nu's arm. She then placed the IV in Neter-Nu's right foot, despite her lack of training and without a doctor's order for that placement. On July 28, Neter-Nu complained of pain in his right foot, so Nurse Mittler paged Dr. Abbas. An x-ray ordered for his foot showed no fracture or soft-tissue swelling. On July 29, a nurse examined Neter-Nu's right foot and saw signs of "IV infiltration," and a nurse's note from the next day said there was slight bruising with no reports of numbness. On July 30, Dr. Abbas discharged Neter-Nu. The discharge note instructed Neter-Nu to return to the emergency room if symptoms persisted or worsened.

Upon discharge, Neter-Nu took a bus for sixteen hours to Sioux City, Iowa, where his employer had taken his truck. When he arrived, he

checked into a hotel for three days, never left his room, kept his foot elevated, and avoided "putting weight on it." Tr. Vol. 5, pp. 197–98. He then checked into Mercy Medical Center emergency/urgent care with black toes where treating physicians found no blood flow in several of his right toes. Concluding that the foot was "unsalvageable," ER doctors referred Neter-Nu to the University of Nebraska Medical Center, where, on August 19, he underwent a below-the-knee amputation of his right leg. Ex. Vol. 11, p. 194.

Neter-Nu filed a proposed complaint with the Indiana Department of Insurance. According to the medical-review panel, the evidence did not support a finding that medical providers failed to meet the standard of care. Neter-Nu then filed a complaint in the trial court against Dr. Abbas, Nurse Mittler, and Methodist Hospital. His complaint alleged that Nurse Mittler's negligent placement of the IV in his foot resulted in his amputation, that Dr. Abbas negligently failed to identify and treat the foot after Nurse Mittler placed the IV, and that Methodist was vicariously liable for the actions of its employees.

A two-week jury trial was held in October and November 2022. During the presentation of evidence, Providers unsuccessfully sought to introduce medical records suggesting that Neter-Nu had a habit of pulling out his IVs. And during cross-examination of Neter-Nu's expert, Dr. Eric Tripp, the trial court denied Providers' request to use certain emails to refresh the expert's recollection or impeach him for inconsistent methodologies. At the close of Neter-Nu's evidence, Methodist moved under Trial Rule 50(A) for judgment on the evidence, arguing that expert testimony focused only on Dr. Abbas or Nurse Mittler and, thus, failed to prove Methodist's direct liability or vicarious liability for the negligence of its other employees. The trial court denied this motion.

After both parties rested, Providers requested two final jury instructions: one on superseding cause and one directing the jury to reach its decision based not on "hindsight" but on conditions that "actually existed" when Providers rendered care. Appellant's App. Vol. 4, pp. 36, 45. In proposing the first of these instructions, Providers argued that Neter-Nu's delay in seeking follow-up care broke the chain of causation

between Nurse Mittler's negligence and his injury. The trial court rejected these proposed instructions. Instead, the trial court's instructions allowed the jury to find Methodist vicariously liable for the actions of its employees other than Dr. Abbas and Nurse Mittler, exposing Methodist to greater liability towards the damages award before the Patient's Compensation Fund pays the balance. *See* Ind. Code § 34-18-14-3(d)(1). The trial court also provided the jury with three general verdict forms to choose from: one finding all Providers liable, one finding none liable, and one finding some liable.

Ultimately, the jury returned an $11,000,000 verdict against all Providers, which the trial court reduced to the $1,250,000 statutory cap. *See* I.C. § 34-18-14-3(a)(3). The trial court also awarded Neter-Nu $79,993.40 in prejudgment interest. Under the Medical Malpractice Act (MMA), each Provider would be liable to pay $250,000 towards the judgment with the remaining balance to be paid by the Patient's Compensation Fund. *See* I.C. §§ 34-18-14-3(b)(1), (c).

In a unanimous memorandum decision, the Court of Appeals reversed the jury verdict and remanded for a new trial. *Abbas v. Neter-Nu*, No. 23A-CT-438, 2024 WL 2933113, at *1 (Ind. Ct. App. June 11, 2024). The panel held that the trial court erred in denying Methodist's Rule 50(A) motion because Neter-Nu presented no evidence of Methodist's direct liability or vicarious liability for an agent other than Dr. Abbas or Nurse Mittler. *Id.* at *5. Similarly, the panel reasoned, the trial court should not have given instructions allowing the jury to find Methodist liable on that basis. *Id.* at *6. Next, the panel concluded that the trial court should have instructed the jury on superseding cause because Neter-Nu's delay in seeking follow-up care could have broken the chain of causation between Nurse Mittler's initial negligence and the ultimate amputation. *Id.* at *8. The panel also held that the trial court made several evidentiary errors when it denied Providers' request to use certain records intended to impeach Neter-Nu's testimony that he was a compliant patient and to refresh Dr. Tripp's recollection and impeach him with inconsistent statements. *Id.* at *9–11. The panel concluded that these errors together were not harmless. *Id.* at *11. Finally, the panel declined to address Neter-Nu's cross-appeal issue regarding the calculation of prejudgment interest. *Id.* at *11 n.6.

Neter-Nu petitioned for transfer, which we granted, vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standards of Review

This Court reviews the denial of a Rule 50(A) motion de novo. *Cosme v. Clark*, 232 N.E.3d 1141, 1152 (Ind. 2024). And this Court reviews a trial court's jury instructions, decisions to admit or exclude evidence, and rulings on prejudgment interest for an abuse of discretion. *See Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006); *Price v. State*, 765 N.E.2d 1245, 1248 (Ind. 2002); *Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1204 (Ind. 2012).

## Discussion and Decision

In resolving this case, our opinion first addresses whether the trial court erred in inviting the jury to find Methodist liable independent of its vicarious liability for Dr. Abbas and Nurse Mittler. *See infra* Section I.A. Though we conclude that it did, it does not require reversing the jury verdict. *See infra* Section I.B. Next, we address whether the trial court abused its discretion in refusing to give the Providers' proposed instructions on superseding cause and use of hindsight in evaluating the standard of care. We hold that it did not because the instructions given effectively covered these issues. *See infra* Sections II.A–B. We then address whether the trial court abused its discretion by preventing the Providers from using certain medical records from Neter-Nu's prior hospitalizations and by preventing them from using an email intended to refresh the recollection of Neter-Nu's expert. Because the medical records amounted to impermissible character evidence, and because the Providers failed to lay the necessary foundation for refreshing recollection, we hold that the trial court did not abuse its discretion. *See infra* Sections III.A–B. Finally, the trial court's error in denying Methodist's Rule 50(A) motion requires recalculating prejudgment interest. *See infra* Section IV.

# I. The trial court erred by inviting the jury to find Methodist liable independent of its vicarious liability for Dr. Abbas and Nurse Mittler, but joint-and-several liability precludes the need for reversal.

In malpractice cases, like other kinds of negligence actions, the plaintiff must prove (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached its duty by allowing its conduct to fall below the applicable standard of care, and (3) a compensable injury proximately caused by the defendant's breach of duty. *Methodist Hosps., Inc. v. Johnson*, 856 N.E.2d 718, 720–21 (Ind. Ct. App. 2006). Although hospitals do not "practice" medicine, they can be directly liable to a plaintiff for negligent supervision, training, or retention of personnel who do practice medicine on their behalf. *Cmty. Health Network, Inc., v. McKenzie*, 185 N.E.3d 368, 375 (Ind. 2022). Hospitals may also face vicarious liability for the negligence of their agents, such as the doctors and nurses they employ. *See id.* at 375, 379. In many cases, to establish the applicable standard of care for a health-care provider and to prove that a health-care provider's negligence caused their injury, the plaintiff must provide expert opinion. *Simmons v. Egwu*, 662 N.E.2d 657, 658 (Ind. Ct. App. 1996), *trans. denied*; *Harris v. Jones*, 143 N.E.3d 1012, 1017 (Ind. Ct. App. 2020).

## A. The trial court erred when it denied Methodist's Trial Rule 50(A) motion and gave instructions inviting the jury to find Methodist liable independent of its vicarious liability for Dr. Abbas and Nurse Mittler.

At trial, Methodist moved unsuccessfully for judgment on the evidence on the limited issue of its direct liability or vicarious liability for an agent other than Dr. Abbas and Nurse Mittler. Similarly, Methodist objected to the court's instructions inviting the jury to find Methodist liable for the

liability of "any other" agent of Methodist.[1] Appellant's App. Vol. 4, pp. 88, 96; Tr. Vol. 9, pp. 195, 196. Methodist argues that, while evidence established its vicarious liability for Dr. Abbas and Nurse Mittler, Neter-Nu presented no evidence showing Methodist's direct liability or vicarious liability for another agent. We agree.

Under Indiana Trial Rule 50(A), a movant may seek judgment on the evidence (directed verdict) at the close of a plaintiff's case if all or some of the issues are "not supported by sufficient evidence." *Cosme*, 232 N.E.3d at 1148 (quoting Ind. Trial Rule 50(A)). If the movant succeeds in making this showing, the court "shall withdraw such issues from the jury" and enter judgment "notwithstanding a verdict." Ind. T.R. 50(A). A court should not direct a verdict unless "there is a total absence of evidence or legitimate inference in favor of the plaintiff upon an essential issue; or where the evidence is without conflict and is susceptible of but one inference." *Whitaker v. Borntrager*, 122 N.E.2d 734, 734–35 (Ind. 1954). "[T]he court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the [nonmovant]." *Id.* at 735. Likewise, if the trial court denies a Trial Rule 50(A) motion and instructs the jury on the issue, the instruction must be supported by evidence in the record. *See Blocher v. DeBartolo Props. Mgmt., Inc.*, 760 N.E.2d 229, 235 (Ind. Ct. App. 2001), *trans. denied.*

Neter-Nu argues that Methodist was directly negligent for failing to train and supervise Nurse Mittler on IV policy. But a separate cause of action for negligent supervision accrues when an employee "steps beyond the recognized scope of his employment to commit a tortious injury upon

---

[1] Methodist objected to instructions 10, 18, and 8. Instruction 10 provided that, "Defendant Methodist Hospital concedes that Nurse Morgan Mittler, Dr. Zainab Abbas and *any other doctors, nurses, or medical providers* who treated Mr. Neter-Nu" were Methodist's agents. Appellant's App. Vol. 4, p. 88 (emphasis added). Instruction 18, in turn, directed the jury as follows: "If you decide that Zainab Abbas, M.D., Morgan Mittler, R.N., *or any other Methodist Hospital employee or agent*" were negligent and caused Neter-Nu's injury, then they are jointly liable regardless of their degree of negligence. *Id.* at 96 (emphasis added). Finally, Instruction 8 instructed the jury that Neter-Nu must prove "Zainab Abbas, M.D., Morgan Mittler, R.N., *and/or* Methodist Hospital" failed to exercise reasonable care and caused his injuries. *Id.* at 86 (emphasis added).

a third party" and therefore does not apply where "an employer has stipulated that his employee was within the scope of his employment." *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 332 (Ind. Ct. App. 2006) (quoting *Tindall v. Enderle*, 320 N.E.2d 764, 768–69 (Ind. Ct. App. 1974)), *trans. denied*. And here, because Methodist stipulated that Nurse Mittler acted within the scope of employment, it cannot be liable for negligent supervision. *See* Appellant's App. Vol. 4, p. 88; Oral Argument at 05:51–05:56 (hospital conceding that it is vicariously liable for negligence of Nurse Mittler).

Neter-Nu also argues Methodist is vicariously liable for the negligent acts of other agents besides Dr. Abbas and Nurse Mittler. Neter-Nu presented evidence of conflicting entries in Methodist's records by non-party nurses, and evidence that non-party employee and hospitalist Dr. Clive Alonzo approved the placement of the IV in Neter-Nu's foot. But Neter-Nu provided no expert testimony on how these specific actions fell below the applicable standard of care. *See* Tr. Vol. 3, pp. 88–89, 118, 197 (Nurse Lisa Stringer testifying only about how inconsistent documentation by Nurse Mittler breached the standard of care); Tr. Vol. 4, pp. 164, 168 (Dr. Ahmet Gurbuz declining to opine on chart entries and limiting his expert opinion to Dr. Abbas only); Tr. Vol. 5, pp. 15–16, 76 (Dr. Tripp testifying to the standard of care required of Dr. Abbas "or any of the Methodist hospitalists" but then clarifying that his opinion relates only to Dr. Abbas). Unless the physician's conduct is so obviously substandard that negligence is within the common knowledge of lay people, *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005), "[e]xpert opinion is indispensable to an evaluation of a particular defendant's conduct within the framework of the duty imposed by law," *Bonnes v. Feldner*, 642 N.E.2d 217, 220 n.1 (Ind. 1994) (quoting *Stumph v. Foster*, 524 N.E.2d 812, 814 (Ind. Ct. App. 1988)). Absent such testimony, the trial court should have granted Methodist's Rule 50(A) motion and should not have instructed

the jury inviting them to find Methodist liable independent of its vicarious liability for Dr. Abbas and Nurse Mittler.[2]

## B. There is no need to reverse the jury verdict given the application of joint-and-several liability.

To the extent the trial court erred by denying Methodist's Rule 50(A) motion and inviting the jury in its instructions to find Methodist liable independent of its vicarious liability for Dr. Abbas and Nurse Mittler, the errors do not require reversal. Joint-and-several liability applies to negligent defendants in medical-malpractice suits. *Ind. Dep't of Ins. v. Everhart*, 960 N.E.2d 129, 138 (Ind. 2012). Under joint-and-several liability, each defendant is liable for the entire damages award, regardless of the degree of the defendant's negligence. *See id.* at 137. The trial court instructed the jury that, "regardless of [a defendant's] degree of negligence, they are jointly liable for the entire amount of Franklyn Neter-Nu's damages," and that the jury "must return a verdict against all negligent defendants in a single amount for the total damages" without considering "the amount that any individual defendant will pay toward [the] verdict." Appellant's App. Vol. 4, p. 96. Because joint-and-several liability applies in medical-malpractice cases, the jury did not award damages based on each liable defendant's individual degree of negligence. Instead, it awarded damages based on Neter-Nu's injury. Therefore, the error in inviting the jury to find Methodist negligent for the

---

[2] Methodist also objected to the verdict forms. The trial court tendered three verdict forms for the jury to choose from: one finding all the Providers liable, one finding none liable, and one where the jury could select some of the Providers liable. The jury chose the form finding all Providers liable. Methodist argues that the jury-verdict form improperly invited the jury to find Methodist liable independent of its vicarious liability for Dr. Abbas and Nurse Mittler. We disagree. The jury was instructed on vicarious liability and that a hospital is liable for the negligent acts of its employees and agents acting within the scope of their employment. Appellant's App. Vol. 4, p. 88. The trial court also instructed the jury that Methodist conceded that Dr. Abbas and Nurse Mittler were its employees and agents. *Id.* The jury was allowed to conclude that Dr. Abbas and Nurse Mittler were liable and that Methodist was vicariously liable, and the verdict form accurately reflected this conclusion when it said the jury found against all three Providers. Therefore, there was no error in the verdict form.

actions of agents besides Dr. Abbas and Nurse Mittler did not impact the damages amount. Instead, the error impacts who pays the damages before the Patient's Compensation Fund pays the balance.

The MMA places limits on a patient's recovery. Under Indiana Code section 34-18-14-3(d), if a health-care provider "is adjudicated liable *solely*" based on the conduct of its agent or employee while "acting in the course and scope of employment," then "the total amount" payable to the claimant on behalf of the agent or employee "*and* the health care provider" is $250,000. I.C. § 34-18-14-3(d)(1) (emphases added) (for malpractice occurring after June 30, 1999, and before July 1, 2017). Responsibility for paying the balance of the adjudicated amount to which the claimant is entitled falls on other liable health-care providers, the Patient's Compensation Fund, or both. I.C. § 34-18-14-3(d). Since Methodist is *solely* liable by reason of Dr. Abbas's and Nurse Mittler's negligence, then Neter-Nu can recover a total of $500,000—$250,000 on behalf of Dr. Abbas and Methodist and $250,000 on behalf of Nurse Mittler and Methodist—before the Patient's Compensation Fund pays the balance.

## II. The trial court did not abuse its discretion in refusing to give the Providers' proposed jury instructions.

When evaluating a jury instruction, this Court considers "1) whether the instruction correctly states the law, 2) whether there is evidence in the record supporting the instruction, and 3) whether the substance of the instruction is covered by other instructions." *Blocher*, 760 N.E.2d at 235. A trial court must give a proposed instruction "only if it covers an essential element of the case supported by evidence, correctly states the law material to the case and when no other instruction covers that area of the law." *State v. Bouras*, 423 N.E.2d 741, 744 (Ind. Ct. App. 1981).

Here, Providers fault the trial court for refusing to give two of their proposed jury instructions—one on superseding cause, allowing the jury to conclude that Neter-Nu's delay in obtaining follow-up care broke the chain of causation between Nurse Mittler's initial negligence and his

ultimate injury; and one that would have prohibited the jury from using hindsight to evaluate the applicable standard of care. For the reasons below, we find no abuse of discretion.

### A. Even if Providers' proposed instruction on superseding cause were proper, the trial court's instructions on causation covered the issue.

In medical-malpractice claims, like other negligence claims, the plaintiff must prove that the defendant's breach of duty proximately caused the plaintiff's injury. *Methodist Hosps.*, 856 N.E.2d at 721. But an "intervening cause" can break the chain of causation between the defendant's original negligence and the plaintiff's injury, thus superseding the defendant's breach of duty. *Wilson v. Lawless*, 64 N.E.3d 838, 848 (Ind. Ct. App. 2016), *trans. denied*. The "key to determining whether an intervening agency has broken the original chain of causation is to determine whether, under the circumstances, it was reasonably foreseeable that the agency would intervene in such a way as to cause the resulting injury." *Id.* (quoting *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009)). To determine whether an intervening cause is unforeseeable and therefore superseding, courts consider factors such as (1) whether the intervening actor is independent from the alleged tortfeasor; (2) whether the instrumentality of harm is under the complete control of the intervening actor; and (3) whether the intervening actor, rather than the original tortfeasor, is in the better position to prevent the harm. *Id.* at 849.

Providers argue that their proposed instruction on superseding cause was necessary because there was "*80-plus hours of darkness*" in between Neter-Nu's discharge from Methodist and the time he presented to Urgent Care in Iowa. Appellant's Br. at 36. In that time, Providers insist, he could have kicked something, tripped, fallen, or taken some other actions that led to his injuries. Providers also argue that Neter-Nu's delay in getting follow-up care could have caused his injuries.

We reject these arguments. Rather than point to record evidence to support the proposed instruction, Providers' arguments—about what

*could have* caused the injury—amount to nothing more than speculation. Methodist's expert testified that acute limb ischemia, the condition Neter-Nu likely suffered from, manifests within six to eight hours, and Neter-Nu's expert, Dr. Ahmet Gurbuz, testified, "time is tissue," meaning tissue destruction does not stop until blood flow is reestablished. Tr. Vol. 4, p. 5. Although this testimony explains when acute limb ischemia would have manifested, and that the injury worsens with time when there's no treatment, it does not lead to a conclusion that Neter-Nu's foot would have been salvaged had he gotten follow-up care sooner. Therefore, the trial court did not abuse its discretion in declining to give the proposed instruction.

Even if Neter-Nu should have sought follow-up care sooner than he did, his failure to do so doesn't necessarily support a superseding-cause affirmative defense. The Restatement of Torts (Second) defines a superseding cause as "an act of a *third person or other force* which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440, at 465 (Am. L. Inst. 1965) (emphasis added); *Wilson*, 64 N.E.3d at 848 (stressing that "a chain of causation may be broken if an *independent* agency intervenes between the defendant's negligence and the resulting injury") (emphasis added) (internal quotation marks and citation omitted). Here, especially, Neter-Nu was prescribed narcotics and had no medical training, suggesting that he might not have realized the extent of his injuries and making it foreseeable that he would have delayed seeking follow-up care.[3]

Finally, even if the proposed instruction were proper, the trial court's model instruction on causation essentially covered the issue of

---

[3] Instead, the Providers' proposed instructions on superseding cause appear to be an attempt to revive their failure-to-mitigate defense which they withdrew at trial. *See* Tr. Vol. 9, pp. 120–21, 130–31, 133. *See, e.g., Foster v. Owens*, 844 N.E.2d 216, 222 (Ind. Ct. App. 2006) (holding that a patient's refusal to get a follow-up procedure after physician's medical malpractice would be failure to mitigate her already inflicted damages, rather than contributory negligence), *trans. denied*.

superseding cause. *See Bouras*, 423 N.E.2d at 744 (concluding the trial court is not required to give an instruction when another "instruction covers that area of the law"). In *Control Techniques, Inc. v. Johnson*, this Court held that refusing to instruct the jury on superseding cause was not reversible error because the doctrines of causation and foreseeability—set forth in separate instructions—impose the same limitations on liability as the superseding-cause doctrine. 762 N.E.2d 104, 108 (Ind. 2002). We reasoned that causation limits a defendant's liability to foreseeable consequences, but a superseding cause is, by definition, one that is not foreseeable. *Id.* So, the superseding-cause "doctrine in today's world adds nothing to the requirement of foreseeability that is not already inherent in the requirement of causation." *Id.*

Here, the trial court instructed the jury that "[a] health care provider's conduct is legally responsible for causing an injury if: (1) the injury would not have occurred without the conduct, and (2) the injury was a natural, probable, and *foreseeable* result of the conduct." Appellant's App. Vol. 4, p. 90 (emphasis added). Because the instruction limits a defendant's liability to a foreseeable result and a superseding cause would make the result unforeseeable, the trial court need not have instructed the jury on superseding cause. To be sure, as Providers point out, *Control Techniques* involved comparative fault whereas the MMA applies contributory negligence. Appellant's/Cross-Appellee's Reply Br. at 28–29. Under a contributory-negligence scheme, any fault attributable to the claimant may bar recovery if the fault proximately caused the claimant's damages. *Sawlani v. Mills*, 830 N.E.2d 932, 941–42 (Ind. Ct. App. 2005), *trans. denied*. Under a comparative-fault scheme, by contrast, any fault attributable to the claimant diminishes the damages award proportionately. *Hopper v. Carey*, 716 N.E.2d 566, 575 (Ind. Ct. App. 1999), *trans. denied*. But whether contributory negligence or comparative fault applies, the party raising these defenses must still prove that the contributory negligence or comparative fault proximately caused the injury. *See Sawlani*, 830 N.E.2d at 942; *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243–45 (Ind. 2003). Because *Control Techniques* applies here, we conclude that the trial court did not abuse its discretion in failing to provide a superseding-cause instruction.

In sum, given the lack of evidence that getting follow-up care sooner would have saved Neter-Nu's foot, the trial court did not abuse its discretion in declining to give the Providers' proffered jury instruction on superseding cause. And the jury instructions essentially covered superseding cause when the trial court properly instructed the jury on proximate cause.

## B. Providers' proposed instruction on avoiding hindsight as a basis for its standard-of-care determination was effectively covered by other jury instructions.

The Providers also contend that the trial court erred by refusing to instruct the jury that its "determination should not be based on hindsight" when determining "whether [the Providers] exercised reasonable care" in treating Neter-Nu. Appellant's App. Vol. 4, p. 45. In support, the Providers cite cases where courts found similar instructions appropriate. *See Dahlberg v. Ogle*, 373 N.E.2d 159, 164 (Ind. 1978) (instructing the jury "not to utilize retrospection or hindsight" when determining whether defendant physicians were negligent) (emphasis omitted); *Blevins v. Clark*, 740 N.E.2d 1235, 1241 (Ind. Ct. App. 2000) (instructing the jury "to evaluate the care rendered in this case solely based upon the conditions known or that should have been known to [the defendant physician] at the time, and not on the basis of hindsight"), *trans. denied*.

But a trial court is not required to give a jury instruction where another instruction covers that area of law. *See Bouras*, 423 N.E.2d at 744. In *Carter v. Robinson*, the Court of Appeals held that when a trial court instructed a jury that a practitioner must use the degree of care a reasonable practitioner would use "*under the same or similar circumstances,*" there was no need for an instruction that a "determination should not be based on hindsight." 977 N.E.2d 448, 457, 458 (Ind. Ct. App. 2012), *trans. denied*. Here, the trial court provided a similar instruction stating that, when determining whether the Providers exercised reasonable care, the jury should consider "the degree of care and skill that a reasonably careful, skillful, and prudent physician and/or nurse would use *under the same or similar circumstances.*" Appellant's App. Vol. 4, p. 89 (emphasis added). By

instructing the jury to evaluate the Providers based on what a reasonable provider would do in those same circumstances, the trial court effectively instructed the jury not to use hindsight. Therefore, there was no error in failing to provide the instruction against using hindsight.

## III. The trial court did not abuse its discretion by precluding Providers from using certain medical records and emails.

A trial court has "broad discretion to admit or exclude evidence." *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). This Court will only disturb a trial court's ruling "if it amounts to an abuse of discretion, meaning the court's decision is clearly against the logic and effect of the facts and circumstances or it is a misinterpretation of the law." *Id.* If an error has occurred, we determine if the error is prejudicial by "assess[ing] the probable impact the evidence had upon the jury in light of all of the other evidence that was properly presented." *Id.* A trial court's evidentiary ruling can be affirmed on any basis apparent in the record, regardless of whether that was the rationale upon which the trial court relied. *Reeves v. State*, 953 N.E.2d 665, 670 (Ind. Ct. App. 2011), *trans. denied*.

Here, Providers argue that the trial court improperly excluded (A) medical records documenting Neter-Nu's disruptive behavior during prior hospitalizations and (B) certain emails from Neter-Nu's expert witness.

### A. The trial court properly excluded records of Neter-Nu's medical history.

The trial court admitted into evidence certain medical records documenting Neter-Nu's disruptive behavior and attempts at pulling out his IVs during prior hospitalizations at other hospitals. Later, the trial court prohibited Providers from using these records when examining

witnesses and in closing argument.[4] Providers primarily wanted to introduce this evidence to show that Nurse Mittler did not act below the applicable standard of care by placing an IV in Neter-Nu's foot after it came out of his arm. Providers insist the trial court erred when it did not allow them to use this evidence to (1) prove Neter-Nu had a habit of pulling out his IVs, (2) explain the basis of expert-opinion testimony, and (3) impeach Neter-Nu's testimony that he is a "compliant patient." Appellant's Br. at 49 (quoting Tr. Vol. 6, pp. 48–49). We address these arguments in turn.

The Providers first argue that these records constitute admissible habit evidence. Indiana Evidence Rule 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Habit is "evidence of one's regular response to a repeated specific situation." *Lewis v. State*, 34 N.E.3d 240, 247 (Ind. 2015) (quoting *Carlson v. Warren*, 878 N.E.2d 844, 850 (Ind. Ct. App. 2007)). To admit evidence of habit, "the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner." *Id.* at 248 (quoting *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994)). In essence, the offering party must show the conduct is "'semi-automatic' in nature." *Id.* (quoting *Thompson*, 33 F.3d at 854). Here, the Providers produced evidence showing that Neter-Nu removed his IVs seven times over the course of four hospitalizations. But Providers failed to identify the denominator—the total number of times Neter-Nu had received an IV. Therefore, the Providers did not show that Neter-Nu's conduct was a *semi-automatic* reaction nearly every time he has an IV. *See Thompson*, 33 F.3d at 855 (concluding that an officer's use of excessive force in five incidents did not constitute evidence of habit).

---

[4] The Providers protest that the trial court would not allow them to use *admitted* medical records. But a "trial court's control and discretion to change its own rulings is firmly established in common law" and is reviewed for "abuse of discretion." *In re Est. of Hammar*, 847 N.E.2d 960, 962 (Ind. 2006).

Instead, the trial court properly excluded the medical records as impermissible evidence of other acts to prove character. Indiana Evidence Rule 404(b)(1) prohibits evidence of other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rule is designed to prevent the jury from assessing a party "on the basis of his past propensities, the so called 'forbidden inference.'" *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind. 1997). Here, the trial court prevented the Providers from referring to the records so that the jury would not judge Neter-Nu based on what happened in different hospitals in different instances. The trial court properly excluded the evidence because the jury might impermissibly use the records showing Neter-Nu pulled out his IVs during previous hospitalizations to infer that he pulled out his IVs in this instance.

Second, the Providers argue they could use the medical records as the basis of an expert's opinion testimony under Indiana Evidence Rule 703. Specifically, they argue that the experts could have referenced those records as the basis of their opinions on whether Nurse Mittler met the applicable standard of care when placing the IV in Neter-Nu's foot. Appellant's Br. at 47. We disagree. Rule 703 provides that "[e]xperts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." Nothing in the rule explicitly allows the expert to mention the fact that they relied on the records when forming their opinion. *See Barrix v. Jackson*, 973 N.E.2d 22, 26–27 (Ind. Ct. App. 2012) (concluding that an unauthenticated medical record was inadmissible even though the expert's opinion was rendered from the record), *trans. denied*. In any case, Nurse Mittler testified that "it seemed to be that perhaps just because [Neter-Nu] wasn't feeling well and wasn't super alert that *he was turning in a way that was removing the IVs from his arms*." Tr. Vol. 6, p. 230 (emphasis added). Providers were able to present evidence that Nurse Mittler thought the IVs kept coming out of Neter-Nu's arms, making it appropriate for her to place the IV in Neter-Nu's foot. And Nurse Mittler was unaware of Neter-Nu's history of pulling IVs at the time, so the medical records did not affect Nurse Mittler's decision to place the IV in his foot. Therefore, any error in preventing Providers from referring to the medical records was harmless.

Finally, the Providers argue that the evidence of Neter-Nu's history of removing his IVs and failing to take blood-pressure medication could be used to impeach Neter-Nu's testimony that he's a "compliant patient." Appellant's Br. at 49 (quoting Tr. Vol. 6, pp. 48–49). But the Providers didn't raise this argument at trial, effectively waiving it for appellate review. *See Pearman v. Stewart Title Guar. Co.*, 108 N.E.3d 342, 350 (Ind. Ct. App. 2018), *trans. denied*. Waiver aside, the Providers still had other opportunities to impeach Neter-Nu when he claimed to be a "compliant" patient. For example, Providers cross-examined Neter-Nu about his refusal to obtain other treatment, unrelated to his foot, while he was at Methodist. *See* Tr. Vol. 6, pp. 74, 82–83, 131–32; Tr. Vol. 7, p. 189. So, any error in not allowing the Providers to impeach Neter-Nu with the medical records is harmless.

## B. The trial court properly excluded emails from Neter-Nu's expert witness.

After Neter-Nu's expert, Dr. Tripp, testified at trial to Neter-Nu's injury and symptoms, Providers on cross-examination sought to use a previous email Dr. Tripp sent to Neter-Nu's counsel to (1) refresh Dr. Tripp's recollection, and (2) impeach him. Though the trial court excluded this evidence on hearsay and relevance grounds, we find no abuse of discretion.

When Providers asked Dr. Tripp if he recalled an email he sent to Neter-Nu's counsel about Neter-Nu's injury, he responded, "Yeah, it's been a while though." Tr. Vol. 5, p. 96. Based on this response, Providers attempted to use the email to refresh Dr. Tripp's recollection. Neter-Nu objected on hearsay and relevance grounds, which the trial court sustained. Dr. Tripp then testified that Neter-Nu's symptoms included severe pain, numbness, and an inability to move his toes. Dr. Tripp also testified that the evidence would not have been more damaging for the Providers had Neter-Nu's discoloration been in the furthest part of the foot involving his toes that eventually lost blood flow. After Dr. Tripp was excused, and while outside the jury's presence, the Providers made an offer of proof by producing the email in question. The email stated that

Neter-Nu had no signs of severe injury other than severe pain, and that the evidence would have been more damaging for Providers if discoloration had been in the furthest part of the foot involving the toes that eventually lost blood flow.

Indiana Evidence Rule 612 allows the use of a writing to refresh a witness's recollection. To refresh a witness's recollection, "[t]he witness must first state that he does not recall the information sought by the questioner." *Thompson v. State*, 728 N.E.2d 155, 160 (Ind. 2000) (quoting 13 Robert Lowell Miller, Jr., *Indiana Practice* § 612.201, at 226 (2d ed. 1995)). After that occurs, the "witness should be directed to examine the writing, and be asked whether that examination has refreshed his memory." *Id.* (quoting Miller, *Indiana Practice* § 612.201, at 226). Here, Dr. Tripp testified that he *did* recall the email. Accordingly, Providers failed to lay the necessary foundation to refresh a witness's recollection, and the trial court committed no error.

Still, Providers insist that they could have used the email to impeach Dr. Tripp because his testimony was not consistent with the emails. Under Indiana Evidence Rule 613(b), "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible" for impeachment purposes "only if the witness is given an opportunity to explain or deny the statement." When Providers first started asking Dr. Tripp about the email and Neter-Nu objected, Providers argued "impeachment is one purpose" for the email if Dr. Tripp made an inconsistent statement. Tr. Vol. 5, p. 98. But because Dr. Tripp had not yet made a statement inconsistent with the email, the email could not be admitted for impeachment. The Providers needed to first confirm Dr. Tripp's statement made at trial and *then* impeach him with the inconsistent statements in the email.

As he continued his testimony, Dr. Tripp testified about Neter-Nu's symptoms that indicated severe injury such as nerve-function change, possible muscle change, arterial-vascular injury, and decreased blood flow. Providers then asked Dr. Tripp about his email which said that, other than severe pain, Neter-Nu had inconsistent signs of severe injury. When Neter-Nu objected, Providers did not argue they were using the email for impeachment. Instead, they argued that the email went to

methodology and then they informed the court they would make an offer of proof. By failing to argue they were using the email for impeachment, the Providers waived the issue for appellate review. *See Pearman*, 108 N.E.3d at 350.

## IV. Though we affirm the jury verdict and damages award, the trial court's error in denying Providers' Rule 50(A) motion still requires recalculation of prejudgment interest.

The trial court awarded prejudgment interest to Neter-Nu in the amount of 8% of $250,000 for 48 months. Neter-Nu argues that the trial court should have awarded prejudgment interest in the amount of each defendant's liability. We agree.

The Prejudgment Interest Act permits courts to "award prejudgment interest as part of a judgment." I.C. § 34-51-4-7. The prejudgment interest award is meant to "compensate the plaintiff for the lost time value of money." *Gregory & Appel Ins. Agency v. Phila. Indem. Ins. Co.*, 835 N.E.2d 1053, 1063 (Ind. Ct. App. 2005) (quoting *Johnson v. Eldridge*, 799 N.E.2d 29, 33 (Ind. Ct. App. 2003)). This Court has held that a qualified health-care provider is responsible for the payment of prejudgment interest as it is a collateral-litigation expense, even if payment would cause the health-care provider's debt to exceed the amount recoverable under the MMA. *Emergency Physicians of Indianapolis v. Pettit*, 718 N.E.2d 753, 757 (Ind. 1999). When more than one health-care provider is found liable, the trial court apportions prejudgment interest to each liable defendant on the damages award that they are responsible for paying. *Id.*; *see also Poehlman v. Feferman*, 717 N.E.2d 578, 583 (Ind. 1999) (finding "each judgment debtor is *individually responsible* for its collateral litigation expenses"); *Cahoon v. Cummings*, 734 N.E.2d 535, 547–48 (Ind. 2000) ("[W]e have held that prejudgment interest is recoverable from a health care provider on the amount of the judgment against that provider.").

Once the trial court exercised its discretion in awarding prejudgment interest and selected an interest rate and appropriate term, it should have

then calculated prejudgment interest based on the liability of each defendant. The statutory liability of each Provider is $250,000. *See* I.C. § 34-18-14-3(d)(1). But when a provider is *solely* liable based on the conduct of its agent, the total amount payable *on behalf of both the provider and its agent* is $250,000. *Id.* Because Methodist was not directly liable or vicariously liable for an agent other than Dr. Abbas or Nurse Mittler, when the trial court used its discretion to award prejudgment interest, it should have calculated prejudgment interest as 8% of *$500,000* for 48 months—$250,000 for Dr. Abbas and Methodist and $250,000 for Nurse Mittler and Methodist. We therefore remand to the trial court to recalculate prejudgment interest based on the Providers' statutory liability.

# Conclusion

Our courts promise litigants a fair trial, not necessarily a perfect one. And Neter-Nu and the Providers received a fair trial here. We affirm the jury verdict but reverse and remand for the trial court to enter Methodist's Rule 50(A) motion and recalculate prejudgment interest based on the Providers' statutory liability under the MMA.[5]

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANTS
Michael E. O'Neill
Julie M. Blair
Kathleen M. Erickson
Kelly K. McFadden

---

[5] We thank amicus curiae Indiana Trial Lawyers Association for its helpful brief and oral argument.

O'Neill McFadden & Willett LLP
Schererville, Indiana

ATTORNEYS FOR APPELLEE
David J. Cutshaw
Gabriel A. Hawkins
Justin C. Kuhn
Edward B. Mulligan V
Cohen & Malad, LLP
Indianapolis, Indiana

Keith Michaels
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE—INDIANA TRIAL LAWYERS
ASSOCIATION
Sara A. Langer
Steven L. Langer
Langer & Langer
Valparaiso, Indiana